714 F.2d 962
 20 ERC 1838, 15 Envtl. L. Rep. 20,735
 AMERICAN MOTORCYCLIST ASSOCIATION, etc., et al., Plaintiffs-Appellants,
v.
James G. WATT, etc., et al., Defendants-Appellees.
COUNTY OF INYO, a political subdivision of the State of
California, Plaintiff-Appellant,
v.
James G. WATT, etc., et al., Defendants-Appellees.
 Nos. 82-5099, 82-5100.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 3, 1983.
Decided Sept. 1, 1983.
 
 Robert L. Klarquist, Washington, D.C., for defendants-appellees.
 Robert E. Hinerfeld, Murphy, Thornton, Hinerfeld & Elson, Los Angeles, Cal., for plaintiffs-appellants.
 Appeal from the United States District Court for the Central District of California.
 Before WRIGHT and SCHROEDER, Circuit Judges, and REED,* District Judge.
 SCHROEDER, Circuit Judge.
 
 
 1
 This is an appeal from the district court's denial of a preliminary injunction to prevent the federal government from implementing the California Desert Conservation Area Plan. Such a plan for land management is called for by section 601 of the Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1781(d) (FLPMA). The district court considered plaintiffs' claims that implementation of this particular plan would violate portions of FLPMA. Plaintiffs on appeal argue that in addition to those claimed violations, the court should have considered alleged violations of the National Environmental Policy Act, 42 U.S.C. §§ 4321 et seq. (NEPA).
 
 
 2
 We hold that under the applicable standards the district court did not abuse its discretion in refusing to issue an injunction. We further hold that the presence of a claim of violation of NEPA in addition to claims of FLPMA violations would not affect the district court's result in this case. We therefore affirm the district court's decision, reported at 534 F.Supp. 923 (C.D.Cal.1981).
 
 I. The District Court Proceedings
 
 3
 Plaintiffs-Appellants are, first, the American Motorcyclist Association and Sports Committee, District 37, A.M.A., Inc. (AMA), a national organization of motorcyclists who participate in competitive and recreational motorcycle events, and, second, the County of Inyo (Inyo), a political subdivision of the state of California. Defendants-appellees are the Secretary of the Interior (Secretary), the Director of the Bureau of Land Management (BLM), and the California State Director of the BLM.
 
 
 4
 The land management plan in question governs the use, development and protection of federal land in the California desert. See Department of the Interior, Bureau of Land Management, The California Desert Conservation Area Plan 6 (1980) (hereinafter the Plan). The Plan covers over 12 million acres (the approximate total area of New Hampshire and Vermont, combined) located within the 25 million acres (approximately the size of the State of Ohio) which Congress has designated the California Desert Conservation Area (CDCA) in section 601, 43 U.S.C. § 1781(c). As part of the FLPMA, Congress identified the CDCA as an area in need of conservation and protection. 43 U.S.C. § 1781(a). Congress directed the Secretary to enact interim land management regulations, but contemplated that after study, a long-range, comprehensive land use plan would be adopted for the federally owned lands in the area. 43 U.S.C. § 1781(d) & (e). The Plan was adopted in 1980.
 
 
 5
 Plaintiffs moved for a preliminary injunction before the Plan took effect, alleging that in adopting it the defendants violated various procedural provisions of NEPA, FLPMA and BLM planning regulations under FLPMA, 43 C.F.R. §§ 1600 et seq. Plaintiffs sought to enjoin implementation of the Plan until the defendants remedied the alleged defects.
 
 
 6
 In support of its motion for injunctive relief pending trial, AMA alleged that the Plan would prevent traditional recreational vehicle use of the California desert and would diminish the number and quality of motorcycle events. It contended that its members would be "irreparably harmed" by having to comply with time-consuming and frustrating permit applications for races. Inyo alleged that the Plan, which affects approximately half of Inyo County, is inconsistent with its own land use plan, that it failed to protect certain environmental features, and that its operation would erode Inyo's tax base.
 
 
 7
 The district court found there was a strong likelihood the plaintiffs would be able to prove that the BLM failed in several material respects to follow its planning regulations, in violation of subsections 202(c)(9) & (f) of FLPMA, 43 U.S.C. § 1712(c)(9) & (f). 534 F.Supp. at 935. The defects identified by the district court were the defendants' failure to develop a preferred alternative, to make appendices available to the public in a timely manner, to evaluate inconsistencies with local government plans and to make material changes in the Plan and Environmental Impact Statement (EIS) available for public comment. Id. at 935-36.
 
 
 8
 Despite the plaintiffs' probability of success on the merits, the court nevertheless determined that the equities did not warrant issuing a preliminary injunction because plaintiffs had not shown they would suffer irreparable harm, or that the balance of hardships tipped in their favor. It also found that a preliminary injunction would not be in the public interest.
 
 
 9
 In reaching its decision, the district court specifically refrained from considering plaintiffs' NEPA claims, holding instead that both plaintiffs lacked standing to raise such claims. 534 F.Supp. at 929 n. 6. The substance of plaintiffs' NEPA claims is similar in nature to their FLPMA claims, in that they challenge the defendants' failure properly to consider alternatives, to circulate documents and to respond to public comment. Plaintiffs contend on appeal that the district court erred in holding they lacked standing to raise the NEPA claims, and that existence of such claims requires issuance of a preliminary injunction.
 
 
 10
 II. Effect of the NEPA Claims on the Preliminary Injunction Decision
 
 
 11
 We recognize two sets of standards for evaluating claims to injunctive relief, which we have termed the "traditional" and the "alternative" tests. See Aleknagik Natives Ltd. v. Andrus, 648 F.2d 496, 501 (9th Cir.1980). The traditional equitable criteria for determining whether an injunction should issue are
 
 
 12
 (1) Have the movants established a strong likelihood of success on the merits; (2) does the balance of irreparable harm favor the movants; (3) does the public interest favor granting the injunction?
 
 
 13
 Id. The "alternative" test permits the moving party to meet its burden by demonstrating either a combination of probable success and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in its favor. Benda v. Grand Lodge of IAM, 584 F.2d 308, 314-15 (9th Cir.1978), cert. dismissed, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979); William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 526 F.2d 86, 88 (9th Cir.1975). The district court here expressly applied both tests, and held that plaintiffs were not entitled to an injunction under either. We reverse an order issuing or denying a preliminary injunction only if the lower court abused its discretion, or based its decision upon erroneous legal premises. Los Angeles Memorial Coliseum Comm'n v. National Football League, 634 F.2d 1197, 1200 (9th Cir.1980).
 
 
 14
 The plaintiffs identify as legal error the district court's holding that they lacked standing to raise NEPA claims. That holding is in serious doubt at least as to Inyo, in light of our intervening decision in California v. Block, 690 F.2d 753 (9th Cir.1982). We there held that a governmental entity in geographical proximity to the site of proposed action, and which must under NEPA be consulted in the EIS process, has standing to challenge the EIS. Id. at 776.
 
 
 15
 Assuming NEPA standing exists, however, it would not affect all of the factors which the district court considered. Because the NEPA claims are essentially similar to the FLPMA claims which the district court recognized plaintiffs had standing to raise, the injury to the plaintiffs is the same under both statutes. In addition, neither side contends that adding NEPA claims would materially affect the district court's analysis of the plaintiffs' likely success on the merits.
 
 
 16
 The only question then is whether plaintiffs are correct in their position that the existence of a probable NEPA violation affects the district court's assessment of the public interest. Plaintiffs contend that recognizing their NEPA claims would require us to hold that a preliminary injunction must issue in this case. For the purpose of considering this argument we assume not only that plaintiffs have standing to pursue the NEPA claims but also that they have made a strong showing on the merits.
 
 
 17
 The presence of strong NEPA claims gives rise to more liberal standards for granting an injunction. See Warm Springs Dam Task Force v. Gribble, 565 F.2d 549, 552 n. 2 (9th Cir.1977); Jones v. District of Columbia Redevelopment Land Agency, 499 F.2d 502, 512 (D.C.Cir.1974), cert. denied, 423 U.S. 937, 96 S.Ct. 299, 46 L.Ed.2d 271 (1975); Environmental Defense Fund v. TVA, 468 F.2d 1164, 1184 (6th Cir.1972); Scherr v. Volpe, 466 F.2d 1027, 1034 (7th Cir.1972). The premise for relaxing the equitable tests in NEPA cases is that irreparable damage may be implied from the failure of responsible authorities to evaluate thoroughly the environmental impact of a proposed federal action. Friends of the Earth, Inc. v. Coleman, 518 F.2d 323, 330 (9th Cir.1975). In many instances those charging NEPA violations are able to make a compelling showing of imminent and irreversible harm unless the governmental action is stayed. See, e.g., Lathan v. Volpe, 455 F.2d 1111, 1116-17 (9th Cir.1971).
 
 
 18
 There are nevertheless cases where public concerns other than failure to comply with NEPA must be weighed in determining whether to grant an injunction. In Alpine Lakes Protection Society v. Schlapfer, 518 F.2d 1089 (9th Cir.1975), we held that "unusual circumstances" required the court to determine whether the equities in fact favored an injunction. Id. at 1090. The plaintiffs there sought, on NEPA grounds, to enjoin a grant of access which permitted the logging of infested trees. The court held that the balance of equities weighed against the injunction. It looked both to the risk that the timber would be worthless if not promptly removed, and to the risk that the tree infestation would spread to adjacent national forestlands. In denying the injunction it stated that defendants had shown a more tangible and immediate harm, as well as a stronger public interest. Id.
 
 
 19
 Alpine thus authorizes the court not only to weigh the relative hardship and harms to the parties, but to examine how the greater public interest may be affected in the unusual case where enjoining government action allegedly in violation of NEPA might actually jeopardize natural resources. Cf. Kleppe v. Sierra Club, 427 U.S. 390, 407-08, 96 S.Ct. 2718, 2729, 49 L.Ed.2d 576 (1976) (no grounds for NEPA injunction where party seeking one would suffer no harm and opposing party showed irreparable harm and injury to the public interest).
 
 
 20
 As in Alpine, it is clear in this case that strong environmental considerations militated against enjoining the Plan. The district court found there was a danger of harm to the fragile desert resources of the CDCA if the Plan's restrictions were lifted and plaintiffs were allowed to pursue increased motor vehicle use. 534 F.Supp. at 937. This danger of harm is the kind of unusual circumstance which we said in Alpine calls for the "individual weighing" of the equities. 518 F.2d at 1090.
 
 
 21
 Our decision in Alpine does not stand in isolation. Other circuits have also held that a showing of NEPA violation should not automatically lead to an injunction where other public interests may be adversely affected. Realty Income Trust v. Eckerd, 564 F.2d 447, 457 (D.C.Cir.1977); New York v. Nuclear Regulatory Commission, 550 F.2d 745, 753-55 (2d Cir.1977).
 
 
 22
 The district court in this case did engage in the required weighing, and it concluded that the balance favored the government because enjoining the Plan would leave fragile desert resources vulnerable to permanent damage from increased recreational use, a harm which Congress expressly intended to prevent. 534 F.Supp. at 937. Plaintiffs assert, though not strenuously, that they demonstrated that the Plan would cause "environmental harm." Many of the allegations in the district court primarily concerned reduced recreation and development opportunities, which the district court properly viewed as posing no danger of irreparable injury to the environment or to the public interest.
 
 
 23
 More serious allegations of injury concerned inconsistencies between the Plan and Inyo's county plan; but we conclude, however, that the district court properly determined that the harm to Inyo's planning processes was not comparable to the harm enjoining the Plan would cause to the CDCA and the public interest. We agree with the district court's observation that while the claimed procedural deficiencies in the Plan's adoption have caused uncertainty in Inyo's planning process, "issuance of a preliminary injunction would do little to redress that injury, since the Plan's validity will remain uncertain until judgment has been entered on the merits in this action." 534 F.Supp. at 937. The district court's analysis is supported by the record and its decision must therefore be affirmed.
 
 
 24
 One aspect of the district court's analysis deserves some clarification, however. The court stated that it was adopting a special injunction requirement for environmental cases so that, under either of our two preliminary injunction tests, it would consider whether the public interest is advanced by issuance of an injunction. 534 F.Supp. at 929. This was no doubt because the "alternative test" does not expressly recite the public interest as a factor to be considered. A Supreme Court decision issued since the district court decided this case clarifies the matter, however, by holding that the public interest is a factor which courts must consider in any injunctive action in which the public interest is affected. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982); see also Yakus v. United States, 321 U.S. 414, 440-41, 64 S.Ct. 660, 674-75, 88 L.Ed. 834 (1944). This recognition of the obligation to protect the public interest in injunction cases does not detract from the correctness of the district court's analysis; the court was indeed required to consider the public interest. It simply needed no special rule in order to do so.
 
 
 25
 Plaintiffs have not demonstrated any abuse of discretion in the district court's determination that enjoining the plan would not be in the public interest. Congress expressly found that the CDCA is a "total eco-system that is extremely fragile, easily scarred, and slowly healed." 43 U.S.C. § 1781(a)(2). Congress' overriding concern was to "provide for the immediate and future protection and administration of the public lands in the California desert." 43 U.S.C. § 1781(b). The Plan seeks to accommodate economic, educational, scientific and recreational uses in the "unique setting" created by the fragility of desert lands, and by the stress that human use places upon arid eco-systems. Plan at 5-6. There is ample support for the district court's conclusion that the public interest in protecting and managing the CDCA would be severely disserved by enjoining the Plan.
 
 
 26
 We conclude that the district court's denial of a preliminary injunction was not an abuse of its discretion, and was based on correct legal premises.
 
 
 27
 Affirmed.
 
 
 
 *
 Honorable Edward C. Reed, Jr., United States District Judge for the District of Nevada, sitting by designation