UNITED STATES of America, Plaintiff–Appellee,

v.

Sung Jin KIM, Defendant–Appellant.

No. 95–16840.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 12, 1996.*

Decided Aug. 30, 1996.

* The panel finds this case appropriate for submission without argument pursuant to Fed. R.App. P. 34(a) and 9th Cir. R. 34–4.

Hayden Aluli, Honolulu, Hawaii, for defendant-appellant.

Beverly Wee Sameshima, Assistant United States Attorney, Honolulu, Hawaii, for plaintiff-appellee.

Before WIGGINS and TROTT, Circuit Judges and VANCE,** District Judge.

WIGGINS, Circuit Judge:

## OVERVIEW

Sung Jin Kim appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate his guilty plea conviction and sentence for possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), and for return of $105,000, forfeited by defendant pursuant to a settlement agreement in two civil forfeiture actions filed by the government against defendant's property. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS

On January 14, 1992, defendant pleaded guilty to one count of possession with intent to distribute approximately 800 grams of crystal methamphetamine in violation of 21 U.S.C. § 841(a)(1). Specifically, defendant admitted that, on September 6, 1991, he de- livered approximately one pound of crystal methamphetamine to an individual who was cooperating with the Federal Bureau of Investigation ("FBI") in Honolulu. Defendant was arrested immediately. Thereafter, he surrendered an additional half pound of methamphetamine, which was in his apartment. In sum, "the total crystal methamphetamine held by defendant for sale on September 5, 1991, was approximately 800 grams." On August 19, 1992, the district court sentenced defendant to 84 months of imprisonment and 5 years of supervised release, and imposed a $25,000 fine and $50 assessment fee.

In addition to the criminal indictment against defendant, the government also commenced one administrative and two civil judicial forfeiture proceedings against defendant's properties based on probable cause that the properties were connected with defendant's drug activities. In the administrative proceeding, $20,340 in U.S. currency, found at defendant's sister-in-law's residence after defendant admitted that he instructed his sister-in-law to remove the amount from his apartment, was administratively forfeited because no claim of ownership to the property was filed. In the two judicial forfeiture proceedings against jewelry and real property owned by defendant, the government and defendant stipulated that defendant would pay the government $105,000 in exchange for return of the jewelry and real property and for dismissal of the civil forfeiture actions. On August 21, 1992, the district court approved the parties' "Stipulation for Compromise Settlement." Thereafter, the district court in the criminal action amended defendant's Judgment and Commitment Order to eliminate the $25,000 fine imposed against him.

In August 1995, the district court denied defendant's 28 U.S.C. § 2255 petition for habeas corpus to vacate his conviction and sentence, and for return of the $105,000 paid by defendant pursuant to the Stipulation for Compromise Settlement. The court rejected defendant's arguments that 21 U.S.C. § 841

** Hon. Sarah S. Vance, United States District Judge for the Eastern District of Louisiana, sitting by designation.

is an unconstitutional exercise of Congress' power under the Commerce Clause and that his criminal conviction and civil forfeitures violated the Fifth Amendment's Double Jeopardy Clause.

## DISCUSSION

### I. STANDARD OF REVIEW

■■■ We review challenges to the constitutionality of a criminal statute *de novo. United States v. Davis,* 36 F.3d 1424, 1434 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995). We also review *de novo* the district court's interpretation of federal forfeiture law. *United States v. 1980 Lear Jet, Model 35A, Serial No. 277,* 38 F.3d 398, 400 (9th Cir.1994).

### II. COMMERCE CLAUSE

■■■ A statute is within Congress' authority to legislate under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, if Congress could reasonably find that the class of regulated activity affects interstate commerce. *United States v. Lopez,* —— U.S. ——, —— —— ——, 115 S.Ct. 1624, 1629–30, 131 L.Ed.2d 626 (1995). Relying on the Supreme Court's decision in *Lopez,* defendant argues that Congress exceeded its authority under the Commerce Clause when it enacted 21 U.S.C. § 841(a)(1).[1] In particular, defendant contends that possession of a controlled substance is not necessarily a commercial activity that may be regulated under the Commerce Clause, § 841(a)(1) impermissibly regulates intrastate activity, and states have primary authority to define the penalties for possession of a controlled substance. We conclude that defendant's Commerce Clause argument lacks merit.

In *Lopez,* the Supreme Court held that the Gun–Free School Zones Act of 1990 ("Gun Act"), 18 U.S.C. § 922(q), which prohibited possession of a firearm within 1,000 feet of a school, exceeded Congress' power under the Commerce Clause because mere possession of a gun in a school zone did not substantially affect interstate commerce. First, the Court found that § 922(q) "by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Lopez,* —— U.S. at —— ——, 115 S.Ct. at 1630–31.[2] Second, the Court noted that the Gun Act threatened federalism both by regulating firearm possession even where such conduct is not outlawed by the state, and by regulating education, a traditional concern of the states. *Id.* at —— n. 3, 115 S.Ct. at 1631 n. 3, 1633.

Contrary to defendant's contentions, *Lopez* neither purports to espouse a more critical test of Congress' authority under the Commerce Clause nor implicitly overrules prior decisions upholding the constitutionality of § 841(a)(1). *See Branch v. Tunnell,* 14 F.3d 449, 456 (9th Cir.) (stating that a Supreme Court decision overrules Ninth Circuit precedent if it undermines the circuit decision and is "closely on point"), *cert. denied,* —— U.S. ——, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994). Instead, the Supreme Court employed the same analysis it used previously, and rather than limiting the applicability of the Commerce Clause, the Court simply declined to expand the breadth of Congress' power to regulate under the Commerce Clause to include the Gun Act. *Lopez,* —— U.S. at ——, 115 S.Ct. at 1634 (stating that the problem with the Gun Act was that neither possession of a firearm nor presence in a school zone was a basis for exercising the federal commerce power).

1. Section 841(a)(1) provides:
   (a) **Unlawful acts.** Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally-
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.
   21 U.S.C. § 841(a)(1).

2. Congress did not make any findings when it first enacted § 922(q). *Id.* at ——, 115 S.Ct. at 1631. In 1994, Congress amended "§ 922(q) to

include congressional findings regarding the effects of firearm possession in and around schools upon interstate and foreign commerce." *Id.* at —— n. 4, 115 S.Ct. at 1632 n. 4. The government did not rely on the subsequent findings as a substitute for the lack of findings in the first instance, though it argued that the subsequent findings "at a very minimum ... indicate that reasons can be identified for why Congress wanted to regulate this particular activity." *Id.* (citation omitted).

■ Unlike the Gun Act, § 841(a)(1) does not "plow[ ] thoroughly new ground" or "represent[ ] a sharp break with the long-standing pattern" of federal regulation. *Id.* at ——, 115 S.Ct. at 1632 (citation omitted). In fact, courts have determined consistently that intrastate drug activities regulated by § 841(a)(1) are tied to interstate commerce. We have previously upheld the constitutionality of § 841(a)(1) by concluding that Congress has the authority under the Commerce Clause to criminalize intrastate drug activity. *United States v. Visman,* 919 F.2d 1390, 1393 (9th Cir.1990) (holding that Congress may constitutionally regulate intrastate criminal cultivation of marijuana plants by deferring to "Congress' findings that controlled substances have a detrimental effect on the health and general welfare of the American people and that intrastate drug activity affects interstate commerce"), *cert. denied,* 502 U.S. 969, 112 S.Ct. 442, 116 L.Ed.2d 460 (1991). After *Lopez,* we again acknowledged that drug trafficking affects interstate commerce. *See United States v. Staples,* 85 F.3d 461, 463 (9th Cir.1996) ("Unlike education, drug trafficking is a commercial activity which substantially affects interstate commerce.").

Also unlike the Gun Act, Congress made specific findings concerning the effect that drug trade has on interstate commerce. *See* 21 U.S.C. § 801(2) ("The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people."); *id.* § 801(3) ("A major portion of the traffic in controlled substances flows through interstate and foreign com-

merce."); *id.* § 801(4) ("Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances."); *id.* § 801(6) ("Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic."). Based on these findings and the ample judicial recognition that an interstate market for illegal drugs exists, every circuit that has considered a Commerce Clause challenge to § 841(a)(1) after *Lopez* has upheld the provision's constitutionality. *See United States v. Bell,* 90 F.3d 318, 320–21 (8th Cir.1996) (citing *United States v. Brown,* 72 F.3d 96, 97 (8th Cir.1995) (per curiam), *cert. denied,* —— U.S. ——, 116 S.Ct. 2581, 135 L.Ed.2d 1095 (1996)); *United States v. Lerebours,* 87 F.3d 582, 594–85 (1st Cir.1996); *United States v. Wacker,* 72 F.3d 1453, 1475 (10th Cir.1995), *petition for cert. filed,* —— U.S.L.W. —— (U.S. June 10, 1996) (No. 95–9284); *United States v. Leshuk,* 65 F.3d 1105, 1111–12 (4th Cir.1995).[3]

In sum, because *Lopez* does not call into question the correctness of this court's decision in *Visman,* we reject defendant's Commerce Clause argument.[4]

## III. DOUBLE JEOPARDY

Defendant's remaining arguments based on violation of the Fifth Amendment's Double Jeopardy Clause are foreclosed by *United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (holding that civil forfeitures do not constitute punishment for purposes of the Double Jeopardy Clause), and by *United States v. Cretacci,* 62 F.3d 307, 310–11 (9th Cir.1995) (holding that the administrative forfeiture of unclaimed prop-

**3.** Since *Lopez,* courts have also upheld the constitutionality of other sections of Title 21, which criminalize intrastate drug dealing, under the Commerce Clause. *See United States v. Tucker,* 90 F.3d 1135, 1139–41 (6th Cir.1996); *United States v. Rogers,* 89 F.3d 1326, 1337–38 (7th Cir.1996); *United States v. Genao,* 79 F.3d 1333, 1337 (2d Cir.1996); *United States v. Clark,* 67 F.3d 1154, 1165–66 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1432, 134 L.Ed.2d 554 (1996), *cert. granted and judgment vacated,* —— U.S. ——, 117 S.Ct. 40, —— L.Ed.2d —— (1996).

**4.** Defendant's final argument that § 841(a)(1) intrudes into an area traditionally regulated by

states lacks merit. As discussed above, Congress had authority under the Commerce Clause to criminalize the conduct under § 841(a)(1). Moreover, the Supreme Court has recognized Congress' power to regulate illegal drugs. *See Minor v. United States,* 396 U.S. 87, 98 n. 13, 90 S.Ct. 284, 289 n. 13, 24 L.Ed.2d 283 (1969) (stating that "a flat ban on certain [drug] sales ... is sustainable under the powers granted Congress" by the Commerce Clause); *Reina v. United States,* 364 U.S. 507, 511, 81 S.Ct. 260, 263, 5 L.Ed.2d 249 (1960) (referring to Congress' "undoubted power to enact the narcotics laws").

erty is not punishment for double jeopardy purposes), *cert. denied,* —— U.S. ——, 116 S.Ct. 2528, 135 L.Ed.2d 1052 (1996).

## CONCLUSION

For the foregoing reasons, we AFFIRM.