**Angel McClary RAICH, Diane Monson, John Doe No. One, John Doe No. 2, Plaintiffs,**

v.

**John ASHCROFT, as United States Attorney General, et. al., Defendants.**

No. C 02–4872 MJJ.

United States District Court, N.D. California.

March 4, 2003.

As Modified March 19, 2003.

Randy E. Barnett, Boston, MA, David M. Michael, Law Offices of David M. Michael, San Francisco, CA, Robert A. Raich, Oakland, CA, for Plaintiffs.

Mark T. Quinlivan, U.S. Department of Justice, Civil Division, Washington, DC, for Defendants.

## ORDER

JENKINS, District Judge.

### INTRODUCTION

Before the Court is plaintiffs Angel McClary Raich, Diane Monson, John Doe Number One, and John Doe Number Two's ("Raich," "Monson," or "Plaintiffs") motion for a preliminary injunction against Attorney General John Ashcroft ("Defendant" or "the government").[1] Plaintiffs seek to prevent the government from enforcing against them the provisions of the Controlled Substances Act prohibiting the manufacture, distribution, or possession of marijuana. Through California's Compassionate Use Act of 1996, plaintiffs are permitted to use and cultivate marijuana for their personal medical purposes upon a

doctor's recommendation. This Act excepts "medical marijuana" from the usual statutory prohibition against possession of cultivation of marijuana found elsewhere in California law. Federal law has no corollary exceptions, however, for the Controlled Substances Act ("CSA") does not recognize marijuana as having any legitimate medical purpose, and any possession or cultivation of marijuana remains illegal under this act. Plaintiffs ask the Court to enjoin defendant from applying federal law to their actions through a preliminary injunction.

According to plaintiffs, in resolving the constitutional issues raised by this motion, this Court will delineate the limits of state and federal regulatory authority regarding controlled substances, specifically marijuana, when grown locally and used for medical purposes. The government frames the issue a bit more narrowly, and it argues that the Court is bound by existing Ninth Circuit precedent to repel the constitutional challenges to the CSA mounted by plaintiffs. Because the Court finds that the weight of precedent precludes a finding of likelihood of success on the merits, plaintiffs' motion for a preliminary injunction is DENIED.

### FACTUAL BACKGROUND

Plaintiffs Raich and Monson are two California citizens who currently use marijuana as a medical treatment for a variety of serious physical conditions. While Monson cultivates the cannabis she uses, Raich is unable to grow her own. Instead, her caregivers, the two John Doe plaintiffs, cultivate several varieties and provide them to her without charge. (*See* Plain-

---

1. The term "plaintiffs" shall refer to Angel McClary and Diane Monson, as their rights are at the core of the present case. The two John Does will be mentioned specifically when the analysis bears on them directly.

The term "the government" denotes only the federal government. To avoid confusion, any reference to the state government of California will be made by using "California."

tiffs' Memorandum of Law in Support of Motion for Preliminary Injunction ("Motion") at 5:17–22; *see also* Declaration of Angel McClary Raich in Support of Preliminary Injunction ("Raich Decl."), ¶ 48–49.) It is undisputed that both plaintiffs suffer from a number of severe medical conditions. Monson lives with serious chronic back pain, coupled with constant muscle spasms that often prove debilitating. (*See* Declaration of Diane Monson in Support of Motion for Preliminary Injunction ("Monson Decl."), ¶¶ 2, 3.) Her doctor states that these symptoms are caused by a degenerative disease of the spine. (Declaration of Dr. John Rose in Support of Motion for Preliminary Injunction ("Rose Decl."), ¶ 3.) Raich suffers from a daunting litany of more than ten serious medical conditions, many of them life-threatening. (*See* Raich Decl., ¶ 1.) Traditional medicine has utterly failed these women; none of the treatments, prescription medications, or other interventions attempted by them and their physicians has proven effective. (*See* Rose Decl., ¶ 5 (doctor for Diane Monson); *see also* Declaration of Frank Henry Lucido, M.D. in Support of Preliminary Injunction ("Lucido Decl."), ¶ 7 (doctor for Angel McClary Raich).) The only thing that has provided any relief from symptoms and/or improvement in their condition is medication with cannabis. (Rose Decl., ¶ 4; Lucido Decl., ¶ 6.)

With regard to Raich's marijuana, plaintiffs claim that it is cultivated using only water and nutrients originating from within California, and that it is grown exclusively with equipment, supplies, and materials manufactured within the borders of the state. (Motion at 6:10–14.) No similarly detailed statement of local pedigree is made for Monson's cannabis, but as she has grown it herself, her cultivation of marijuana is similarly local in nature. (*See id.* at 5:21.)

Although both plaintiffs fear that federal agents may raid their homes and deprive them of the marijuana they take on a daily basis, only Monson has actually experienced this. (*See* Raich Decl. ¶¶ 56–57; *see also* Monson Decl. ¶ 10.) She reports that deputies from the Butte County Sheriff's Department and agents from the DEA came to her home on August 15, 2002. (Monson Decl., ¶ 10.) While the sheriff's deputies concluded that Monson's use of cannabis was legally permissible under California's Compassionate Use Act, after a three-hour standoff, including an unsuccessful intervention by the local District Attorney with the United States Attorney for the Eastern District of California, the DEA agents seized and destroyed her six (6) marijuana plants. (*Id.*) To avoid a similar occurrence in the future, and to ensure that they will be able to continue to use cannabis as medication, plaintiffs filed suit in this Court on October 9, 2002, seeking declaratory relief and a permanent injunction. The present motion for a preliminary injunction was filed on October 30, 2002, and a hearing on the motion was held on December 17, 2002.

## LEGAL STANDARD

There are various standards the Court can apply to determine whether a preliminary injunction should issue. To meet the "traditional" test, the movant must establish: (1) a strong likelihood of success on the merits; (2) that the balance of irreparable harm favors its case; and (3) that the public interest favors granting the injunction. *American Motorcyclist Ass'n v. Watt,* 714 F.2d 962, 965 (9th Cir.1983). To prevail under the "alternate" test, the movant must demonstrate either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and that the balance of hardships tips sharply in its favor. *Id; Diamontiney v. Borg,* 918 F.2d

793, 795 (9th Cir.1990). The formulations under the "alternate" test represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *Diamontiney*, 918 F.2d at 795. Under either formulation, however, an "irreducible minimum" is that the moving party must show a fair chance of success on the merits. *Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir. 1994).

## ANALYSIS

Plaintiffs' central argument for likelihood of success on the merits focuses on their contention that it would be constitutionally improper to apply the CSA to individuals in their situation. In addition, they also claim that they have a valid medical necessity defense to any enforcement of the CSA against their use of medical marijuana. Plaintiffs' constitutional argument assumes three forms: (1) when applied to purely intrastate, non-commercial use of medical marijuana, the CSA represents an impermissible extension of Congress' power to regulate interstate commerce; (2) enforcement of the CSA against medical use of marijuana is an infringement of rights reserved to the States through the Tenth Amendment; and (3) federal criminalization of medical marijuana violates fundamental rights of citizens that are protected by the Ninth Amendment.

### 1) Federal Prohibition of Medical Marijuana Through The Controlled Substances Act As an Impermissible Expansion of Congress' Commerce Clause Power

■ In the wake of the Supreme Court's decisions in *United States v. Lo-*

*pez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) and *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), plaintiffs argue that application of the Controlled Substances Act to their cultivation and use of medical marijuana exceeds the legitimate reach of congressional power. As these two decisions somewhat abridged Congress' exercise of its Commerce Clause power, plaintiffs contend that the Commerce Clause does not apply to purely intrastate, non-commercial activities, such as medication through cannabis that is permitted by state law. (Motion at 6:24–7:1.) The CSA prohibits the manufacture, distribution, possession with intent to deliver, and even simple possession of marijuana, and Congress is permitted to enact such a law only under the mantle of its power to regulate interstate commerce. *See* 21 U.S.C. §§ 841(a)(1), 844(a); *see also* Motion at 7:21–22 (citing *United States v. Kim*, 94 F.3d 1247 (9th Cir.1996)).

As the Supreme Court in *Lopez* and *Morrison* instructs, Congress' Commerce Clause power is not completely unfettered; it "is subject to outer limits." *Lopez*, 514 U.S. at 557, 115 S.Ct. 1624. The limit relevant to the present case is that the regulated activity must have a "substantial relation to interstate commerce." *Id.* at 559, 115 S.Ct. 1624. Further, Congress must conclude that the activity has an economic effect, and this conclusion must be supported by sufficient findings, findings that are not the result of the type of "attenuated analysis" found problematic in *Morrison*. (Motion at 9:12–15 (quoting *Morrison*, 529 U.S. at 613, 120 S.Ct. 1740)[2].) Plaintiffs argue that the cultivation of medical marijuana, or at least the cultivation and use by plaintiffs in this case, does not substantially affect inter-

---

**2.** The principle that regulated activities must be economic in nature is indeed found in *Morrison* at 613, 120 S.Ct. 1740, but the specific passage quoted by plaintiffs at 9:12–15 of their Motion is found on page 615 of the opinion.

state commerce. (Motion at 10:26–28.) In addition, they assert that there are no congressional findings that local, wholly intrastate cultivation and use of cannabis for medical necessity have any such effect. (*Id.* at 11:11–12.)

Plaintiffs acknowledge that Congress has made findings related to the issue of controlled substances and their effect on interstate commerce, findings that are embodied in the statute itself. *See* 21 U.S.C. § 801(1–7).[3]

(2) The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a detrimental effect on the health and general welfare of the American people. (3) A major portion of the traffic in controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because-

    (A) after manufacture, many controlled substances are transported in interstate commerce,

    (B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and

    (C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.

(4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.

(5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate.

(6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.

*Id.* at (2–6). Rather than ignore these findings, in effect, plaintiffs do two things: they challenge the validity of the findings; and they seek to carve out an exception for people who use locally cultivated medical marijuana that has not impacted interstate commerce in any way. (*See* Reply Memorandum in Support of Preliminary Injunction ("Reply") at 2–3.) Thus, plaintiffs argue that since Congress has failed to establish a nexus between the wholly intrastate, non-commercial use of medical marijuana and interstate commerce, the CSA as applied to them fails constitutional scrutiny.

However, defendant counters plaintiffs' arguments and asserts that the Ninth Circuit has repeatedly held that the Controlled Substances Act is a permissible exercise of congressional authority under the Commerce Clause.

Relying on the Supreme Court's decision in *Lopez,* defendant argues that Congress exceeded its authority under the Commerce Clause when in enacted 21 U.S.C. § 841(a)(1). In particular, defendant contends that possession of a controlled substance is not necessarily a commercial activity that may be regulated under the Commerce Clause, § 841(a)(1) impermissibly regulates intrastate activity, and states have primary authority to define the penalties for possession of a controlled substance.

---

**3.** *See also* the voluminous Comprehensive Drug Abuse Prevention and Control Act of 1970, P.L. 91–513, *reprinted in* 1970 U.S.C.C.A.N. 4566.

We conclude that defendant's Commerce Clause argument lacks merit.

*United States v. Kim,* 94 F.3d 1247, 1249 (9th Cir.1996).[4] The Court of Appeals has rejected challenges to the CSA by a defendant whose marijuana plants were found rooted in the soil, a purely intrastate activity. *See United States v. Visman,* 919 F.2d 1390, 1392 (9th Cir.1990). The defendant in this case was convicted of possession with intent to distribute marijuana, manufacture of marijuana, and maintaining a place for the manufacture of marijuana. Importantly, he was convicted on the basis of plants that law enforcement agents found rooted in the ground, which, by definition, are not moving in interstate commerce.[5] The defendant argued that there is no reasonable basis to assume that these plants affect interstate commerce and that Congress exceeded its authority in regulating intrastate illegal conduct that affects interstate commerce. *See id.* The Ninth Circuit disagreed.

After considering precedent that upheld congressional regulation of intrastate drug activity under the CSA and other precedent that refused to excise individual instances from an entire class of permissibly regulated activity, the court upheld the conviction. *See id.* at 1392–93 (citing *United States v. Rodriquez–Camacho,* 468 F.2d 1220, 1221 (9th Cir.1972) and *Perez v. United States,* 402 U.S. 146, 154, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), respectively). The *Visman* court stated, "We defer to Congress' findings that controlled substances have a detrimental effect on the health and general welfare of the American people and that intrastate drug activity affects interstate commerce." *Id.* at 1393. Thus, the holding in *Visman,* which concerned purely intrastate drug activity, is equally applicable to plaintiffs' cultivation and use of marijuana, which allegedly is wholly intrastate as well. (*See* Motion at 6:10–14, 5:21.)

The Ninth Circuit has also specifically upheld the validity of the CSA in light of the Supreme Court decision in *Lopez,* distinguishing the CSA from the Gun–Free School Zones Act found unconstitutional in that case through the presence of congressional findings to support the CSA. *United States v. Tisor,* 96 F.3d 370, 374 (9th Cir. 1996). The Ninth Circuit has also endorsed the validity and adequacy of Congress' findings supporting the CSA.[6]

---

4. While the quotation mentions only "possession," the crime at issue in *Kim* was not simple possession, but possession with intent to deliver, as evidenced by the reference to 21 U.S.C. § 841(a)(1), and not § 844.

5. Evidence of growing equipment and an indoor growing facility were also discovered at the defendant's house, but the focus of the opinion was only on the purely intrastate nature of plants rooted in the soil.

6. "Appellant urges that Congress may not constitutionally regulate the intrastate distribution of controlled substances. We disagree. Congress may regulate not only interstate commerce but also those wholly intrastate activities which it concludes have an effect upon interstate commerce. Marijuana is listed among the controlled substances in the challenged statute, and Congress has made specific findings as to the effect of intrastate activities in controlled substances on interstate commerce. 'This court will certainly not substitute its own judgment for that of Congress in such a matter unless the relation of the subject to interstate commerce and its effect are clearly nonexistent.' Such is not the case as regards controlled substances.

Congress has concluded that ... controlled substances have a substantial and detrimental effect on the health and general welfare of the American people. [quoting 21 U.S.C. § 801(2)] Appellant urges that this assertion is inapplicable to marijuana. This is a matter, however, whose ultimate resolution lies in the legislature and not in the courts. It is sufficient that Congress have a rational basis for its findings." *United States v. Rodriquez–Camacho,* 468 F.2d 1220, 1221 (9th Cir.1972) (quoting *Stafford v. Wallace,* 258 U.S. 495, 42

Plaintiffs assert that *Lopez* is not dispositive of the Commerce Clause issue raised herein because the Supreme Court has implicitly overruled the Ninth Circuit authority relied on by the government through its decision in *Morrison*. In *Morrison*, the Supreme Court rejected a provision of the Violence Against Women Act of 1994 ("VAWA") not because of a lack of congressional findings, as in *Lopez*, but rather, because of the inadequacy of those findings. *Morrison*, 529 U.S. at 614, 120 S.Ct. 1740. As importantly, plaintiffs argue that the Supreme Court's decision did not invalidate the entire VAWA, but just the portion giving victims of gender-based violence a civil remedy against their assailants. *See id.* at 613, n. 5, 120 S.Ct. 1740. The Supreme Court only found Congress' findings in support of this particular section to be inadequate. Similarly, plaintiffs ask this Court to determine that the findings made by Congress in support of a particular provision of the CSA are inadequate. They charge that the findings are insufficient to support the exercise of Commerce Clause power over the wholly intrastate, non-economic possession and cultivation of marijuana for personal medical use, use that has been made legal under state law. (*See* Motion at 10.)

Contrary to plaintiffs' wishes, the Court is constrained from such a determination by the weight of precedent. As discussed above, the Ninth Circuit has repeatedly upheld the constitutionality of the CSA as applied to marijuana. *See Tisor*, 96 F.3d. at 374; *Rodriquez–Camacho*, 468 F.2d at 1221. The Court of Appeals has confirmed the validity and adequacy of Congress' findings in support of the CSA, including its application to wholly intrastate cultivation of marijuana. *Visman*, 919 F.2d at 1392. This Court may not overrule a decision of the Ninth Circuit in the absence of an intervening Supreme Court decision that undermines the existing precedent, and both cases are closely on point.

> As a general rule, one three judge panel of this court cannot reconsider or overrule the decision of a prior panel. An exception to this rule arises when "an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point."

*United States v. Gay*, 967 F.2d 322, 327 (9th Cir.1992)(citing *United States v. Mandel*, 914 F.2d 1215, 1220–21 (9th Cir.1990)) (quoting *United States v. Lancellotti*, 761 F.2d 1363, 1366–67 (9th Cir.1985)).[7, 8]

While plaintiffs no doubt consider *Morrison* to be the type of an intervening Supreme Court decision required by the holding in *Gay*, and notwithstanding plaintiffs' attempt to create a factual record that would render their "as applied" attack successful under *Morrison*, the decision in *Morrison* is insufficiently on point to per-

S.Ct. 397, 66 L.Ed. 735 (1922)); *accord Visman* 919 F.2d at 1390.

**7.** *United States v. Gay* set forth the rule for a three-judge panel of the Ninth Circuit in overruling the decision of another three-judge panel. The need for an applicable higher-court decision is even more pronounced in the case of a district court, such as this one, overruling Ninth Circuit precedent.

**8.** The Court notes the similar conclusion reached by Judge Fogel in *Wo/Men's Alliance for Medical Marijuana v. United States*, No. 02–MC–7012 JF (N.D.Cal 2002), a case presented to the Court and discussed at the hearing on the motion. The Court also notes that defendant has filed a number of Notices of Recent Case after the hearing date, attempting to draw the Court's attention to other decisions in this Circuit in which courts have declined to accept constitutional challenges to the CSA's application to medical cannabis. Plaintiffs have registered their objections to the timing of these notices, but the objections are moot, as the Court has not considered these cases.

mit this Court to overrule the *Visman, Rodriquez–Camacho,* and *Tisor* line of cases. While the Supreme Court in *Morrison* provided some insight into its analysis of what congressional findings are necessary to meet the "substantially affects" test in the context of a commerce clause challenge, *see id.,* 529 U.S. at 614–18, 120 S.Ct. 1740, the case does not speak to or address the specific findings attendant to the CSA in a way that allows this Court to depart from existing Ninth Circuit precedent on this question. Therefore, this Court is not at liberty to depart from current authority holding that Congress' findings are sufficient to overcome a Commerce Clause challenge, even one involving a purely intrastate possession of a controlled substance.

In the final analysis, neither *Lopez* nor *Morrison* answer definitively the question posed to this Court: whether the Controlled Substances Act, as applied in this case, is beyond the purview of Congress' power to regulate activity under the Commerce Clause. Therefore, the Court is still bound by existing Ninth Circuit authority on this issue.[9]

By arguing that the provisions of the CSA should not be applied to those who cultivate wholly intrastate medical marijuana that has not been circulated in commerce, plaintiffs are asking the Court to ignore valid Ninth Circuit decisions that have endorsed two of Congress' specific findings: (1) controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate; and (2) federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic, 21 U.S.C. § 801(5),(6). In the final analysis, this Court cannot undertake the resolution of this important issue as it is constrained from doing so by existing Circuit precedent—precedent which has found that the CSA passes constitutional muster.

## 2) The Controlled Substances Act As a Violation of the 10th Amendment

■ Plaintiffs correctly state that Congress' power to regulate interstate commerce, while plenary within the field, is nonetheless confined within limits. (Motion at 16:4–9). An important restriction on congressional power is found in the Tenth Amendment, which is designed to proscribe the encroachment of the federal government into areas reserved for the States. Arguing that the Supreme Court has upheld the States' power to enact wholly intrastate measures protecting public health and to regulate professions that closely concern public health, plaintiffs assert that "under the Tenth Amendment, the wholly intrastate activity of possessing and cultivating medical cannabis pursuant to state law, is an exercise of the police

9. Interestingly, the Supreme Court deliberately chose not to address this question in *Oakland Cannabis Club. See United States v. Oakland Cannabis Buyers' Cooperative,* 532 U.S. 483, 494 n. 7, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001) ("Nor are we passing today on a constitutional question, such as whether the Controlled Substances Act exceeds Congress' power under the Commerce Clause."). Thus, the existing Ninth Circuit cases are still binding law. Since the Supreme Court has deliberately chosen not to address the question of whether the CSA represents a constitutionally permissible exercise of Congress' Commerce Clause power, this Court must rely on the precedent provided by the Ninth Circuit.

As plaintiffs point out, Judge Kozinski, in his concurring opinion in *Conant v. Walters,* 309 F.3d 629 (9th Cir.2002), raises interesting and substantial questions, albeit in the context of the First Amendment, regarding the constitutionality of the CSA. However, the concurring opinion in *Conant* is not the law of this Circuit on the important questions currently before this Court.

power reserved to the State of California, primarily responsible for the health and safety of its citizens, a power central to the sovereignty of the States." (Motion at 17:13–16 (earlier quoting *Jacobson v. Massachusetts,* 197 U.S. 11, 38–39, 25 S.Ct. 358, 49 L.Ed. 643 (1905), and *Watson v. Maryland,* 218 U.S. 173, 176, 30 S.Ct. 644, 54 L.Ed. 987 (1910)).)

Defendant argues that since the passage of the Controlled Substances Act was a valid exercise of Congressional power under the Commerce Clause, plaintiffs' Tenth Amendment argument is overcome. The Supreme Court has held that a valid exercise of Commerce Clause authority that displaces States' exercise of their police powers or curtails the States' ability to legislate on matters they may consider important does not constitute an invasion of sovereign areas reserved to the States by the Tenth Amendment. *Hodel v. Virginia Surface Mining and Reclamation Ass'n, Inc.,* 452 U.S. 264, 291, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981). The Constitution has given Congress various enumerated powers, including the power to regulate interstate commerce. If that power, surrendered to the federal government, is validly exercised, it does not infringe upon any sovereignty that has been retained by the States. *See New York v. United States,* 505 U.S. 144, 156–57, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) ("It is in this sense that the Tenth Amendment 'states but a truism that all is retained which has not been surrendered.'") (quoting *United States v. Darby,* 312 U.S. 100, 124, 312 U.S. 657, 61 S.Ct. 451, 85 L.Ed. 609 (1941)).

Examples of where the Supreme Court has curtailed federal power under the Tenth Amendment are found when Congress has compelled some sort of state action. *See New York,* 505 U.S. at 166, 112 S.Ct. 2408 ("We have always understood that where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts."); *Reno v. Condon,* 528 U.S. 141, 149, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000) (preventing the federal government from "commandeering" the state legislative process); *and Printz v. United States,* 521 U.S. 898, 925, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) ("[T]he federal government may not compel the States to implement, by legislation or executive action, federal regulatory programs."). This type of "commandeering" is not at issue in this case, for the federal government is not forcing California, or any other State, to take any action. The CSA regulates individual behavior, and plaintiffs are asking the Court to prevent the government from applying those regulations to their conduct. As the promulgation of the CSA was a legitimate exercise of Congressional power under the Commerce Clause, the Tenth Amendment is not implicated.

### 3) The Controlled Substances Act As a Violation of the Ninth Amendment

■ Plaintiffs argue that while the Tenth Amendment limits Congress solely to the powers enumerated by the Constitution, the Ninth Amendment prohibits an overly broad interpretation of those powers, in order to preserve individual liberties. (Motion at 18:3–11.) Plaintiffs assert that these liberties are not only those delineated in the Bill of Rights, but consist of unenumerated liberties as well. (*Id.* at 17–18.) For this reason, recognized rights such as the right to bodily integrity, the right to amelioration of pain, and the right to prolong one's life, while not listed by the Constitution, nonetheless equally enjoy its protection. (*See id.* at 19:4–9.) Plaintiffs argue that in determining what constitutes one of these unenumerated, yet fundamental rights, the courts should defer to the

judgment of the people. (*See id.* at 23–24.) "Moreover, the People of California and the State of California have expressly determined that 'seriously ill Californians have *the right* to obtain and use marijuana for medical purposes. . . .' Cal. Health & Safety Code § 11362.5(b)(1)(A) (emphasis added)." (*Id.* at 24:13–16.) When it infringes such a fundamental right, including the right of patients to use medication of a kind and quantity adequate to address their pain or prolong their lives, the federal government must provide a compelling reason. (*Id.* at 21:6–14) (citing *Washington v. Glucksberg,* 521 U.S. 702, 766, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1977).) Plaintiffs argue that application of the CSA deprives them of their fundamental right to use the only medication adequate to sustain them, thereby infringing their rights to bodily integrity, to ameliorate their pain, and to prolong their lives, and that the federal government has failed to provide a sufficiently compelling justification for this deprivation.

Defendant counters by asserting that the CSA only deprives plaintiffs of the right to use lawfully a *type of treatment,* not the right to treatment itself. (*See* Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction ("Opp.") at 16–17.) Defendant directs the Court to *Carnohan v. United States,* 616 F.2d 1120 (9th Cir.1980), in which the court found that a terminally ill cancer patient could not seek a declaratory judgment that he had the right to obtain and use laetrile, a non-approved drug for the treatment of cancer. The Court held that Constitutional rights of privacy and personal liberty did not afford the plaintiff the right "to obtain laetrile free of the lawful exercise of government police power." *Id.* at 1122. In this case, the Court also cited with approval the Tenth Circuit's decision in *Rutherford v. United States,* 616 F.2d 455 (10th Cir.1980). The latter case also dealt with cancer patients' ability to obtain lae-

trile for treatment. The Tenth Circuit stated that:

> It is apparent in the context with which we are here concerned that the decision by the patient *whether to have a treatment or not* is a protected right, but his selection of a *particular treatment,* or at least a medication, is within the area of government interest in protecting public health.

*Id.* at 457 (emphasis added). While plaintiffs may vehemently disagree with the wisdom of the federal government's determination that marijuana has no medical efficacy and therefore, that federal law renders it unavailable for prescription to patients, they do not have a fundamental, constitutional right to obtain and use it for treatment. *See* 21 U.S.C. § 812, Schedule I(c)(10) (placing marijuana in Schedule I); *see also* 21 U.S.C. § 812(b)(1)(B) (describing Schedule I drugs as having "no currently accepted medical use in treatment in the United States"); *and Rutherford,* 616 F.2d at 457. Therefore, Congress' outlawing of marijuana, even for medical uses, does not run afoul of the Ninth Amendment.

**4) Availability of the Medical Necessity Defense**

■ Plaintiffs' final argument rests of the defense of medical necessity. Medical necessity was raised as a defense to enforcement of federal marijuana laws in the Ninth Circuit's decision in *United States v. Oakland Cannabis Buyers' Cooperative,* 190 F.3d 1109 (9th Cir.1999). While the Ninth Circuit accepted the possibility of a medical necessity defense to criminal prosecution *for distribution of marijuana for medical purposes, see id.* at 1115, the Supreme Court overruled this decision in *United States v. Oakland Cannabis Buyers' Cooperative,* 532 U.S. 483, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001) (*"OCBC "*). Nonetheless, plaintiffs maintain that the

opinion has been preserved for those people who are not distributors of marijuana. (Motion at 25:6–7.) They rely for this proposition on the wording of Justice Stevens' concurring opinion, who states that since the issue before the Court in *OCBC* was a medical necessity defense to distribution, the reversal of the Ninth Circuit's decision dealt only with this possible offense, leaving the use of medical necessity by persons such as plaintiffs—"seriously ill patient[s] for whom there is no alternative means of avoiding starvation or extraordinary suffering"—as an open question. *OCBC*, 532 U.S. at 501, 121 S.Ct. 1711 (Stevens, J., concurring).[10] However, the language of the majority opinion in OCBC, delivered by Justice Thomas, is dispositive on this question.

> Lest there be any confusion, we clarify that nothing in our analysis, or the statute, suggests that a distinction should be drawn between the prohibitions on manufacturing and distributing and the other prohibitions in the Controlled Substances Act. Furthermore, the very point of our holding is that there is no medical necessity exception to the prohibitions at issue, even when the patient is "seriously ill" and lacks alternative avenues for relief.

*Id.* at 494, n. 7, 121 S.Ct. 1711 (Thomas, J.) As there is no distinction between manufacturing and distribution, for which there is no medical necessity defense, it follows that there is no medical necessity defense for other prohibitions in the CSA, such as possession of marijuana.

The main foundation for the Supreme Court's position in *OCBC* rests upon Congress' findings that marijuana has no currently accepted medical use. *See id.* at 491, 121 S.Ct. 1711 (citing 21 U.S.C. § 811). The original placement of marijuana in Schedule I, the most restrictive schedule of the CSA, means that it was determined that marijuana has no current medical use for treatment in the United States, has a high potential for abuse, and has a lack of accepted safety for use under medical supervision. *Id.* (citing 21 U.S.C. § 812(b)(1)(A-C)).

> It is clear from the text of the Act that Congress has made a determination that marijuana has no medical benefits worthy of an exception. The statute expressly contemplates that many drugs "have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the American people," § 801(1), but it includes no exception at all for any medical use of marijuana. Unwilling to view this omission as an accident, and unable in any event to override a legislative determination manifest in a statute, we reject the Cooperative's argument [that a drug in Schedule I can be medically necessary, notwithstanding that it has "no medical use"].

*Id.* at 493, 121 S.Ct. 1711. Plaintiffs vigorously contest Congress' finding that medical marijuana has no medical application, and the evidence in their declarations is powerful testimony to support their position. Nonetheless, as the Supreme Court was not in a position to overturn the legislative determination that placed marijuana in Schedule I, and thus, made it unavailable for prescription to seriously ill people, much less so is this Court. The Court

---

10. Even if this reading of *OCBC* were correct, this would not shield John Does Number One and Two from possible prosecution. As they are caregivers who distribute marijuana, they would not be able to avail themselves of the necessity defense, unless they were considered to be a single "unit" with Raich for the purpose of criminal liability. While the Compassionate Use Act excludes caregivers as well as patients from California state law criminal liability, it is not clear how broad the protection a medical necessity defense would cast in a federal prosecution.

must also follow the dictate of the Supreme Court in its finding that there is no medical necessity defense for any of the prohibitions contained in the CSA, including even possession for medicinal use.

## 5) Public Interest Factors

■ Since the binding effect of prior decisions indicates that plaintiffs have demonstrated no likelihood of success on the merits, the Court need not address the issue of irreparable harm, the balance of hardships, or the impact of an injunction upon the public interest. *See Stanley v. University of Southern California,* 13 F.3d at 1319. However, the importance of this case dictates that these factors merit some brief attention.[11]

This case has a clear impact on the public interest of all Californians, and it obviously is of paramount interest to plaintiffs. The enactment of the Compassionate Use Act of 1996 manifests the express will of California voters to permit individuals with a medical need for marijuana treatment to have access to the drug, subject to a doctor's supervision. Federal enforcement of the Controlled Substances Act, plaintiffs assert, serves to thwart this will. This conflict between state and federal law is far from a purely theoretical quandary, as Monson's incident with the sheriff's deputies and the DEA amply demonstrates. Plaintiffs' list of medical conditions, and their statements that marijuana is the only medication that has proven effective to ameliorate their symptoms, provide strong evidence that plaintiffs will suffer severe harm and hardship if denied use of it.

Countering plaintiffs' argument, the government contends that the public interest and the other equities actually favor denial of the injunction. The only interests to which it points, though, are the presumption of constitutionality of congressional statutes and the potential of an injunction permitting the use of medical marijuana "to significantly undermine the FDA drug approval process." (Opp. at 24.)[12] In the government's view, Congress has opposed efforts to legalize marijuana and other Schedule I drugs without valid, scientific evidence that they are safe and effective and without the approval of the Food and Drug Administration. (*Id.* quoting Pub.L. No. 015-277, Div. F, 112 Stat. 2681, 760-61

**11.** The Court notes the divergence of opinion regarding analysis of the public interest in the history of the *Oakland Cannabis Buyer's Cooperative* case. In *OCBC,* 190 F.3d 1109, 1114 (9th Cir.1999), the Ninth Circuit found that Judge Breyer's failure to "expressly consider the public interest on the record" in *U.S.* v. *OCBC,* 5 F.Supp.2d 1086 (N.D.Cal.1998), was an abuse of discretion. However, the Supreme Court reversed the Ninth Circuit in its own *OCBC* decision, 532 U.S. 483, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001). In discussing the Ninth Circuit's decision, the Supreme Court held that the district court was not at liberty to consider "any and all factors that might relate to the public interest or the conveniences of the parties, including the medical needs of the Cooperative's patients." *Id.* at 497, 121 S.Ct. 1711. "On the contrary, a court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation. A district court cannot, for example, override Congress' policy choice, articulated in a statute, as to what behavior should be prohibited." *Id.* (citations omitted). The Supreme Court held that an analysis of the public interest is appropriate only in considering an injunction versus other means of enforcing a statute, "To the extent the district court considers the public interest and the conveniences of the parties, the court is limited to evaluating how such interest and conveniences are affected by the selection of an injunction over other enforcement mechanisms." *Id.* at 498, 121 S.Ct. 1711.

**12.** Defendant also argues that no irreparable injury to plaintiffs is possible if they are denied access to medical cannabis because they lack the right to obtain a drug that is not approved by the government for medical use. (Opp. at 22 (citing *Carnohan,* 616 F.2d at 1122, and *Rutherford,* 616 F.2d at 457).)

(1998).) While there is a public interest in the presumption of constitutional validity of congressional legislation, and while regulation of medicine by the FDA is also important, the Court finds that these interests wane in comparison with the public interests enumerated by plaintiffs and by the harm that they would suffer if denied medical marijuana.

However, despite the gravity of plaintiffs' need for medical cannabis, and despite the concrete interest of California to provide it for individuals like them, the Court is constrained from granting their request. Plaintiffs are unable, on this record, to establish the required "irreducible minimum" of a likelihood of success on the merits under the law of this Circuit, and accordingly, the request for injunctive relief must be denied. *See American Motorcyclist Ass'n v. Watt,* 714 F.2d at 965; *Stanley v. University of Southern California,* 13 F.3d at 1319. Since both the "traditional" and "alternative" tests for preliminary injunction require plaintiffs to demonstrate a likelihood of success on the merits, their failure to meet this requirement dictates that their motion for preliminary injunction must be denied under either standard. The fact that, in this Court's view, the equitable factors tip in plaintiff's favor does not alter the Court's conclusion.

## CONCLUSION

All of plaintiffs' arguments in support of their position are unavailing: the weight of precedent precludes this Court from determining that Congress' findings in support of the CSA are insufficient to survive constitutional challenge; the CSA is not a violation of the Tenth Amendment or the Ninth Amendment; and plaintiffs cannot successfully mount a medical necessity defense. Since plaintiffs are unable to establish any likelihood of success on the merits,

their motion for preliminary injunction is DENIED.

**IT IS SO ORDERED.**