**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Henry John TISOR, Defendant–Appellant.**

No. 95–30343.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 5, 1996.

Decided Sept. 6, 1996.

Robert P. Kingsley, Spokane, Washington, for defendant-appellant.

Earl A. Hicks, Assistant United States Attorney, Steven J. Larsen, Spokane, Washington, for plaintiff-appellee.

Before: ALARCON, NORRIS and KLEINFELD, Circuit Judges.

ALARCON, Circuit Judge:

Henry John Tisor seeks reversal of the judgment of conviction for violating sections 841(a), 843(b), and 846 of Title 21 of the United States Code. Tisor contends that the district court lacked subject matter jurisdiction because Congress exceeded its authority to regulate interstate commerce by making purely *intra* state drug trafficking a federal

crime. We conclude that the district court had subject matter jurisdiction because Congress reasonably determined that intrastate drug trafficking has a substantial effect on interstate commerce. We affirm because none of Tisor's challenges to the judgment has merit.

# I

On January 17, 1995, a Drug Enforcement Agency ("DEA") undercover operation resulted in the purchase of methamphetamine by DEA informant Terry Anderson from Regina Chapman and Norman Jones. John Tisor was identified as the source of the methamphetamine sold to Anderson. The purchase was monitored by DEA Agent Levy. Anderson wore a hidden radio transmitter and a microcassette recorder during the drug transaction.

On February 2, 1995, DEA Agent Levy directed Anderson to purchase additional methamphetamine from Tisor. Pursuant to DEA Agent Levy's instructions, Anderson made two telephone calls to Tisor to arrange the purchase of the drugs. On February 6, 1995 Anderson telephoned Chapman concerning the proposed purchase. That same day, Anderson, again wearing a radio transmitter and a microcassette recorder, purchased methamphetamine supplied by Tisor at the Jones residence. Tisor was observed at the residence by Anderson and DEA Agents Levy and Landers.

Tisor was arrested on May 24, 1995, and charged with one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846; two counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1); and, five counts of use of a communication facility in a drug trafficking crime in violation of 21 U.S.C. § 843(b).

At trial, Anderson testified that Tisor was the source of the methamphetamine he purchased on January 17, 1995, and February 6, 1995. Anderson testified further that on each occasion Tisor handed the drugs to Chapman.

DEA Agent Levy testified that he witnessed Tisor enter Jones' house, the site of the purchase. DEA Agent Landers testified that he witnessed Tisor drive to and from Jones' house on the dates the drugs were purchased.

DEA Agent Levy testified that he instructed Anderson to telephone the co-conspirators to set up both drug purchases. DEA Agent Levy recorded these telephone conversations. DEA Agent Levy listened to the telephone conversations and the drug purchases while they were simultaneously recorded.

In his opening statement, the prosecutor informed the jury that Norman Jones would testify that Tisor distributed methamphetamine to Anderson. When Jones was called as a witness he invoked the privilege against self incrimination in proceedings outside the presence of the jury.

On August 7, 1995, the jury found Tisor guilty on all counts. On September 8, 1995, Tisor moved for a judgment of acquittal. The motion was denied on October 6, 1995. Judgment of conviction was entered on October 26, 1995. Tisor was sentenced to 150 months of imprisonment on the same day.

# II

Tisor contends that the district court lacked subject matter jurisdiction of the offenses defined in 21 U.S.C. § 801 et seq. (the "Controlled Substances Act") because intrastate drug trafficking does not "substantially affect" interstate commerce. "We review de novo a district court's assumption of [subject matter] jurisdiction." *United States v. Vasquez–Velasco*, 15 F.3d 833, 838–39 (9th Cir.1994). Tisor's reliance on *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), for this proposition is misplaced. The activity condemned by the statute interpreted in *Lopez* did not involve a commercial transaction. *Id.* at —— –– ——, 115 S.Ct. at 1630–31. In enacting 18 U.S.C. § 922(q)(1)(A) (the "Gun-Free School Zones Act of 1990"), Congress purported to regulate the possession of a gun within one thousand feet of a school. *Id.* at ——, 115 S.Ct. at 1626.

The Court noted in *Lopez* that the Commerce Clause authorizes Congress to regulate the use of the channels of interstate commerce, the instrumentalities of interstate

commerce, and activities that "substantially affect" interstate commerce. —— U.S. at ——, 115 S.Ct. at 1629. The Court instructed that a wholly intrastate activity which "has nothing to do with 'commerce,'" must "substantially affect" interstate commerce in order to comply with the Commerce Clause. —— U.S. at —— —— ——, 115 S.Ct. at 1630–31. To constitute a constitutionally authorized exercise of power under the Commerce Clause, the Controlled Substances Act must regulate one of the activities identified by the Court in *Lopez*.

Section 841(a) provides as follows:

[I]t shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

21 U.S.C. § 841(a).

Section 843(b) states:

It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.

21 U.S.C. § 843(b). Section 846 reads as follows:

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or the conspiracy.

21 U.S.C. § 846.

Before passing the Controlled Substances Act, Congress made findings describing the impact of intrastate drug trafficking on interstate commerce. Congress found that:

(4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.

. . . .

(6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.

21 U.S.C. § 801(4) & (6). Based on these findings, Congress concluded that "manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce...." 21 U.S.C. § 801(3). Sections 841(a), 843(b), and 846 are part of a statute that prohibits intrastate and interstate commerce in drugs. *See* 21 U.S.C. § 801 et seq.

The presence of Congressional findings in support of the Controlled Substances Act distinguishes this case from the situation presented to the Court in *Lopez*. The Court noted in *Lopez* that Congress did not make any findings prior to enacting the Gun–Free School Zones Act of 1990 regarding the effect of intrastate gun possession on interstate commerce. *Id.* at —— —— —— & n. 4, 115 S.Ct. at 1631–32 & n. 4.

In *United States v. Staples*, 85 F.3d 461 (9th Cir.1996), we addressed the question of the effect of drug trafficking on interstate commerce. In that matter, we upheld the constitutionality of 18 U.S.C. § 924(c)(1) under the Commerce Clause. *Id.* at 463. Section 924(c)(1) provides in pertinent part:

Whoever, during and in relation to any crime of violence or *drug trafficking crime* . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years. . . .

18 U.S.C. § 924(c)(1) (emphasis added). The term "drug trafficking crime," as used in section 924(c), includes violations of sections 841(a), 843(b), and 846. Section 924(c)(2) provides that "[f]or purposes of this subsection, the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)."

The accused in *Staples* was not charged with a violation of section 841(a). In deciding that it was not necessary for the indictment to allege the commission of a drug trafficking crime in order to demonstrate a violation of section 924(c)(1), we adopted the reasoning of the Eighth Circuit in *United States v. Brown*, 72 F.3d 96 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2581, 135 L.Ed.2d 1095 (1996). The Eighth Circuit reasoned as follows:

> Prosecution under section 924(c)(1) does not occur in a vacuum. Rather, it is triggered when one "uses or carries" a firearm during a drug trafficking offense or violent crime for which the individual may be independently prosecuted. *We note that intrastate drug activity affects interstate commerce, 21 U.S.C. § 801;* that Congress may regulate both interstate and intrastate drug trafficking under the Commerce Clause, ... and that section 841(a)(1) is a valid exercise of Congress's Commerce Clause power. *Because [Appellant's] section 924(c)(1) conviction is based on his section 841(a)(1) drug trafficking offense, which involved "an activity that substantially affect[ed] interstate commerce," we reject [Appellant's] Lopez challenge.*

*Brown,* 72 F.3d at 97 (emphasis added) (footnote and citations omitted). In *Staples*, we were also required to consider whether section 841(a) was consistent with the Commerce Clause. Like the Eighth Circuit, we held that "drug trafficking is a commercial activity which substantially affects interstate commerce." *Id.* at 463.

In concluding that Congress did not exceed its power under the Commerce Clause in enacting section 924(c)(1), we stated:

> [Defendant] notes that he was never actually charged with the underlying felony, unlike the defendants in [*United States v.*] *Pappadopoulos* [64 F.3d 522 (9th Cir. 1995)] and *Brown.* Whether or not [Defendant] was charged with the felony, however, the jury found that he had engaged in a crime of drug trafficking which could have been prosecuted in federal court, i.e. *conduct which substantially affected interstate commerce.*

*Id.* at 463 (emphasis added).

Other courts reviewing the question of the continued viability of the Controlled Substances Act after *Lopez* have uniformly found the statute to be constitutional. In *United States v. Leshuk,* 65 F.3d 1105 (4th Cir.1995), the Fourth Circuit held that "[i]n contrast to the firearm possession prohibited in the Gun Act [in *Lopez* ], the intrastate drug activities regulated in the Drug Act are clearly tied to interstate commerce." *Id.* at 1112.

In *United States v. Wacker,* 72 F.3d 1453 (10th Cir.1995), *petition for cert. filed* (NO. 95–9284) (1996), the Tenth Circuit held that *Lopez* did not alter its earlier conclusion that section 841(a) was constitutional because the "conduct regulated by the Drug Act clearly implicates interstate commerce, and Congress made explicit findings explaining the conduct's 'substantial and direct effect upon interstate commerce.'" 72 F.3d at 1475. *Accord United States v. Lerebours,* 87 F.3d 582, 584–85 (1st Cir.1996).

■ Our holding in *Staples* that section 924(c)(1) does not exceed Congressional authority under the Commerce Clause supports our conclusion that in enacting sections 841(a), 843(b), and 846, Congress did not exceed its authority under the Commerce Clause. Intrastate distribution and sale of methamphetamine are commercial activities. The challenged laws are part of a wider regulatory scheme criminalizing interstate and intrastate commerce in drugs. In adopting the Controlled Substances Act, Congress expressly found that intrastate drug trafficking had a "substantial affect" on interstate commerce. Accordingly, we hold that the Controlled Substances Act does not exceed Congressional authority under the Commerce Clause.

## III

In a motion in limine, Tisor objected to the admission of tape recordings on the ground that they contained hearsay. He also objected to the introduction of edited versions of the tapes, rather than the original recordings. DEA Agent Levy made a copy of the tape recordings of the drug transactions which did not include what he characterized as unrelated "small talk." Tisor's counsel objected to the introduction of the edited copies on the grounds that they did not comply with the Best Evidence Rule. Counsel argued further that the alleged "small talk" might constitute a code regarding the drug transactions. The court overruled the objection to the introduction of the tapes, without prejudice to a further objection when they were offered into evidence, based on the alleged failure of the Government to prove a conspiracy, or to lay a proper foundation for their admission. The district court also stated at the close of the in limine proceedings that the jury would be permitted to read transcripts of the recorded conversations to assist them during the playing of the tapes. The court ruled, however, that the transcripts would not be admitted into evidence.

■ Tisor again objected to the admission of the tape recordings when they were offered into evidence by the prosecutor. He did not renew his hearsay objection. Instead, Tisor argued that the prosecutor had failed to prove that DEA Agent Levy could identify Tisor's voice on the tape recording. The district court overruled the objection. Because Tisor has not presented the hearsay question, or the identification issue, for our review in this appeal, we do not consider them. *See In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 379 n. 6 (9th Cir.1995) (issues not raised in an appellant's opening brief are not considered by the court).

■ In a section heading in his opening brief, Tisor states: "The Trial Court Erred By Admitting Abbreviated Versions Of Taped Conversations...." Tisor has failed to present any argument or pertinent authority to support this contention. Accordingly, this issue has been waived. *See Doty v. County of Lassen*, 37 F.3d 540, 548 (9th Cir.1994) ("[t]he failure to brief [an] issue waives [the appellant's] right to appeal" it).

■ Tisor argues in his brief that the tape recordings were inaudible. Tisor failed to object to the admission of the tapes on this ground in the district court. Thus, we must review the question whether inaudible tapes were admitted into evidence for plain error pursuant to Rule 103(d) of the Federal Rules of Evidence [1] and Rule 52(b) of the Federal Rules of Criminal Procedure.[2] Under these rules, an appellate court has "a limited power to correct errors that were forfeited because not timely raised in district court." *United States v. Olano*, 507 U.S. 725, 731, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). If an appellate court concludes that the ruling was plainly erroneous, the appellant has the burden of persuading a reviewing court that the error was prejudicial in that it "affected the outcome of the district court proceedings." *Id.* at 734, 113 S.Ct. at 1778. An appellate court must exercise its discretion to review a forfeited error if the appellant demonstrates that "a miscarriage of justice would otherwise result." *Id.* at 736, 113 S.Ct. at 1779 (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)).

■ Tisor has failed to meet the first limitation on our authority to review the audibility of the tapes under the plain error rule. *See Olano*, 507 U.S. at 732, 113 S.Ct. at 1777 ("[t]he first limitation on appellate authority under Rule 52(b) is that there indeed be an 'error' "). The admission of the tapes was not error. "A recorded conversation is generally admissible unless the unintelligible portions are so substantial that the recording as a whole is untrustworthy." *United States v. Lane*, 514 F.2d 22, 27 (9th Cir.1975). Prior to the admission of the tapes, the prosecution presented evidence that the tapes accurately reflected the con-

---

**1.** Rule 103(d) provides: "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."

**2.** Rule 52(b) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

spirator's conversations regarding the drug transactions. No evidence was presented by Tisor to rebut this testimony. No objection was made after the tapes were played that persons in the courtroom were unable to hear substantial portions of the conversations recorded on the tapes, or that the words were unintelligible. Thus, Tisor has failed to demonstrate that the district court erred in admitting the tapes.

■■■■ Tisor asserts that the trial court erred in failing to review the transcripts for accuracy before permitting the jury to read them while listening to the tapes. The district court's decision to allow the "use of transcripts during trial is reviewed for abuse of discretion." *United States v. Taghipour*, 964 F.2d 908, 910 (9th Cir.), *cert. denied*, 506 U.S. 899, 113 S.Ct. 283, 121 L.Ed.2d 210 (1992).

■■■ A district court is not required as a matter of law to listen to tapes prior to their being played to the jury or determine whether a transcript is accurate before permitting a jury to look at it. We rejected a similar argument in *United States v. Booker*, 952 F.2d 247 (9th Cir.1991). We held in *Booker* that the district court did not abuse its discretion in permitting jurors to use a transcript as an aid to listening to tape recordings "[a]lthough the district court did not review the transcript." *Id.* at 250. We found no abuse of discretion because of the presence of the following factors:

1. The jurors were not allowed to look at the transcripts before the tapes were played.

2. The transcripts were not admitted into evidence.

3. The court instructed the jury that "if there was a discrepancy between the tape and the transcript, the tape governed."

4. The federal agent who prepared the transcript testified to its accuracy.

*Id.* at 250.

In this matter, DEA Agent Levy testified to the accuracy of the transcripts which he prepared. Tisor's counsel was given the transcripts prior to trial and was provided with ample time to identify any alleged inaccuracies and to cross examine DEA Agent Levy regarding the transcripts. Defense counsel did not point to any particular inaccuracy in the transcripts. The jury was not given the transcripts until the tapes were played during trial. The district court admonished the jury that the tape recordings and not the transcripts were the evidence and that any discrepancies were to be resolved in favor of the tape recordings. In light of these safeguards, the district court did not abuse its discretion in permitting the jury to use the transcripts.

**IV**

■■■ In its opening statement, the prosecutor informed the jury that it would call Norman Jones to testify against Tisor. Jones had entered into a plea agreement with the Government in which he agreed to testify. When he was called as a witness, Jones exercised his Fifth Amendment right against self incrimination in proceedings held outside of the presence of the jury. In response to a Government motion for a missing witness instruction,[3] the district court denied the Government's motion, and ruled *sua sponte* that neither side could refer to Jones' failure to testify in its closing arguments.

---

3. A missing witness instruction provides that:
   If it is peculiarly within the power of either the government or the defense to produce a witness who could give relevant testimony on an issue in the case, failure to call that witness may give rise to an inference that this testimony would have been unfavorable to that party. No such conclusion should be drawn by [the jury], however, with regard to a witness who is equally available to both parties or where the testimony of that witness would be merely cumulative.

   The jury must always bear in mind that the law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.
   1 Devitt and Blackmar, Federal Jury Practice and Instructions § 14.15 (4th ed. 1992).

   In *United States v. Bautista*, 509 F.2d 675, 678 (9th Cir.), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975), we stated that "[w]hether this instruction should be given is a matter that lies within the discretion of the trial court."

Tisor argues for the first time on appeal that "the trial court did not properly resolve the issue of whether Jones could validly assert a Fifth Amendment privilege against testifying." (Appellant's Opening Brief at p. 15). He maintains that Jones' assertion of his privilege against self incrimination was a sham. At oral argument, Tisor's counsel conceded that the defense did not inform the district court that there was a question regarding whether Jones had validly asserted his privilege against self incrimination.

■■■■ "Ordinarily we will not decide an issue that was not addressed by the district court. However, we have discretion to review issues raised for the first time on appeal if to do so would not require the development of new facts." *Andersen v. Cumming,* 827 F.2d 1303, 1305 (9th Cir.1987) (citations omitted). "This general rule is supported by considerations of fairness and judicial efficiency." *United States v. Flores–Payon,* 942 F.2d 556, 558 (9th Cir.1991).

■■■■ Whether Jones' responses to relevant questions would have subjected him to a threat of future prosecution and punishment raises complex questions of law and fact that were not developed in the trial court.[4] To determine whether the witness can assert the privilege against self incrimination

> [t]he court is required to examine the claim of the witness and perceive all of the possible implications of the question asked in the context of the trial. From this examination, the trial judge is supposed to ascertain whether a sufficient factual basis *could* exist to justify the assertion of the privilege. Furthermore, this will often be done without the benefit of evidence or testimony which could substantiate the claim. The judge must, in short, rely on his own sound judgment, mixed with considerable perception and imagination in order adequately to protect the witness' constitutional rights.

1 Jack B. Weinstein and Margaret A. Berger, *Weinstein's Evidence* § 104[04], at 104–05 (1996).

Had the issue been addressed to the trial court in the first instance, we could examine the record to determine whether Jones properly exercised his privilege against self incrimination. Since that issue was not brought to the trial court's attention, it would not be fair to the parties for us to speculate whether requiring Jones to answer questions regarding the charged offenses in this matter would have incriminated him. Accordingly, we decline to reach this issue.

■■■■ Relying on *United States v. Kojayan,* 8 F.3d 1315 (9th Cir.1993), Tisor argues that "it is not improper for defense counsel to ask the jury to infer that the government could have called [Jones] as a witness, granted him immunity, and gotten him to testify." (Appellant's Opening Brief at p. 14). Tisor's reliance on *Kojayan* is misplaced. The Government's witness in *Kojayan* was not unavailable to the Government because he had asserted his privilege against self incrimination. To the contrary, the record shows that "the government *could* have called [the absent witness], and could have done so with a very great deal of confidence that he would testify." *Id.* at 1318. Under these circumstances, we concluded that defense counsel's argument was not "even remotely improper." *Id.* at 1321. Unlike the situation in *Kojayan,* the record before us does not demonstrate any prosecutorial misconduct.

## V

■■■■ Tisor argues that the district court improperly denied his motion for a judgment of acquittal based on the insufficiency of the evidence as to Counts II, IV, and V. Tisor made an oral motion for judgment of acquittal based on insufficiency of the evidence at the close of trial pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure.[5]

---

4. We note that in his opening brief, Tisor acknowledges that the question "whether Jones could have withdrawn his guilty plea .... is not before the appellate court since not explored by the trial court." (Appellant's Opening Brief at p. 15 n. 3).

5. Rule 29(a) states in pertinent part:
   (a) *Motion Before Submission to Jury.* Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion *shall order the entry of judgment of acquittal* of one or more of-

This motion was denied. On August 7, 1995, the jury returned guilty verdicts on all counts. On September 8, 1995, Tisor again moved for judgment of acquittal based on insufficiency of the evidence. This motion was denied as untimely, pursuant to Federal Rule of Criminal Procedure 29(c).[6]

■■■■■ "We also review de novo the denial of [a] Rule 29 motion for acquittal, but the test to be applied is the same as for a challenge to the sufficiency of the evidence." *United States v. Riggins*, 40 F.3d 1055, 1057 (9th Cir.1994). Sufficiency of evidence is satisfied if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The Government argues that Tisor waived his right to challenge the sufficiency of the evidence because his Rule 29(c) motion was untimely. In making this argument, the Government has failed to discuss the effect of Tisor's Rule 29(a) motion on his right to question the sufficiency of the evidence on appeal. The Government apparently believes that the filing of a Rule 29(a) motion for a judgment of acquittal, after both sides have rested, is ineffectual to preserve this issue for appeal, if it is followed by an untimely Rule 29(c) motion. The Government has not cited any authority in support of this novel proposition. Surprisingly, we have found no case which expressly considers the question whether a motion for a judgment of acquittal made following the presentation of the evidence by both sides is sufficient to preserve the issue of the sufficiency of the evidence, in the absence of a timely Rule 29(c) motion.

■■■ Under the law of this circuit, it is clear that the right to seek review of the sufficiency of the evidence is waived if the accused fails to make a motion for a judgment of acquittal before the matter is submitted to the jury. For example, in *United States v. Ward*, 914 F.2d 1340 (9th Cir.1990), we concluded:

> In order to preserve [an issue of the sufficiency of the evidence] on appeal, the defendant must move for a judgment of acquittal during the trial pursuant to Fed. R.Crim.P. 29(a). The record reveals that the defendant failed to move for a judgment of acquittal after the government rested its case-in-chief, after the defense rested, and after the government's rebuttal case. Therefore, the appellant waived his right to challenge the sufficiency of the evidence on appeal.

*Id.* at 1346 (citations omitted).

A motion for a judgment for acquittal has been termed "an important safeguard to the defendant," because "[i]t tests the sufficiency of the evidence against him, and avoids the risk that a jury may capriciously find him guilty though there is no legally sufficient evidence of his guilt." 2 Charles Alan Wright, *Federal Practice And Procedure, Criminal 2d* § 461, pp. 637–38 (West 1982). Justice Stewart described the rationale for Rule 29 in the following manner:

> The practice in the federal courts of entertaining properly preserved challenges to evidentiary sufficiency, see Fed.Rule Crim. Proc. 29, serves only to highlight the traditional understanding in our system that the application of the beyond-a-reasonable-doubt standard to the evidence is not irretrievably committed to jury discretion. To be sure, the factfinder in a criminal case has traditionally been permitted to enter an unassailable but unreasonable verdict of "not guilty." This is the logical corollary of the rule that there can be no appeal from a judgment of acquittal, even if the evidence of guilt is overwhelming. The power of the factfinder to err upon the side

---

fenses charged in the indictment or information *after the evidence on either side is closed* if the evidence is insufficient to sustain a conviction of such offense or offenses.

(emphasis added).

**6.** Rule 29(c) provides in relevant part:

(c) *Motion After Discharge of Jury.* If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period.

of mercy, however, has never been thought to include a power to enter an unreasonable verdict of guilty.... Any such premise is wholly belied by the settled practice of testing evidentiary sufficiency through a motion for judgment of acquittal and a post-verdict appeal from the denial of such a motion.

*Jackson*, 443 U.S. at 317 n. 10, 99 S.Ct. at 2788 n. 10 (citations omitted). The importance of Rule 29 is eloquently set forth in the following passage by a well respected legal commentator:

It may be asked why a defendant who has chosen to be tried by a jury rather than by the court should be later permitted to bypass the jury by moving under Rule 29. If the evidence is insufficient to sustain a conviction, why not submit the case to the jury and allow it to reach that conclusion? The answer is that a defendant is entitled to protection against an improper or irrational verdict of the jury. In other words, Rule 29 takes cognizance of the reality that jurors may not always be capable of applying strictly the instructions of the court, nor of basing their verdict entirely upon the evidence developed at the trial.

8A Moore's Federal Practice, Rules Of Criminal Procedure ¶ 29.02, pp. 29–6, 29–7 (Bender 1995).

The Fifth Circuit's analysis of this question in *United States v. Davis*, 583 F.2d 190 (5th Cir.1978) is quite compelling:

Had the alleged insufficiency of the evidence been specifically pointed out to the court by a motion [for a judgment of acquittal] made at the close of the evidence the court could have permitted the government to reopen and put [the witness] back on the stand to testify concerning what, if anything, he communicated to Davis about barrel length. *Indeed one of the salutary purposes of the motion for judgment of acquittal is to give the court the opportunity to correct error at the time and on the spot.*

*Id.* at 195–96 (emphasis added).

Tisor's counsel satisfied Rule 29 when he asked the trial court to rule on the sufficiency of the evidence after both sides had presented all of their evidence to the jury. His client was protected from being convicted if the evidence failed the reasonable doubt standard. The district court had the opportunity to exercise its discretion regarding whether to allow the Government to reopen its case to correct any error if it had omitted essential proof. The filing of an untimely motion under Rule 29(c) does not disadvantage either party's ability to argue the question of the sufficiency of the evidence before an appellate court, if a motion for a judgment of acquittal is made after both sides have completed the presentation of the evidence. Accordingly, we hold that Tisor did not waive his right to challenge the sufficiency of the evidence.

■ We have reviewed the record. Anderson was a percipient witness to Tisor's participation with others in the sale of methamphetamine. Tisor was the source of the drugs. Tisor's car was observed entering and leaving the home where the drug transactions occurred by two DEA Agents. The Government corroborated Anderson's testimony with tape recordings. In the February 3, 1995 telephone conversation, Tisor acknowledged that he remembered Anderson from their previous drug transaction on January 17, 1995. The record demonstrates that there was sufficient evidence for any rational trier of fact to find that Tisor was guilty of distributing methamphetamine and conspiring to do so.

AFFIRMED.