FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

KOBY DON WILLIAMS, AKA Troy,

*Defendant - Appellant*.

No. 24-5792

D.C. No.
2:23-cr-00024-
TOR-1

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted November 20, 2025
Seattle, Washington

Filed April 13, 2026

Before: M. Margaret McKeown, Richard A. Paez, and
Roopali H. Desai, Circuit Judges.

Opinion by Judge McKeown

# SUMMARY[*]

## Criminal Law

The panel affirmed Koby Don Williams's conviction for attempted online enticement of a minor in violation of 18 U.S.C. § 2422(b), vacated his sentence, and remanded for resentencing.

Williams was a United States Immigration and Customs Enforcement officer who falsely claimed, after his arrest, that he was conducting a human trafficking investigation.

Williams challenged the sufficiency of the evidence to support his conviction. The panel concluded that a rational trier of fact could have found the essential elements of the crime of attempted enticement beyond a reasonable doubt, including the contested element of knowing persuasion, inducement, enticement, or coercion.

- This conclusion is not undermined by the fact that, according to Williams, he repeatedly told "Rebecca"—a fictional online persona in an undercover operation that involved decoy posts featuring underage girls on social media platforms or websites—that he did not believe her when she told him that she was a minor. A reasonable jury was entitled to reject this testimony.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

- A reasonable jury could also find that Williams's conduct constituted a "substantial step" toward completing the crime, as required for a Section 2422(b) attempt conviction.

- The panel rejected Williams's argument that Section 2422(b) required the government to show that he attempted to "transform or overcome the will of a minor." The jury needed only to find that Williams knowingly attempted to persuade, induce, entice, or coerce "Rebecca" to engage in sexual acts with him, and not that "Rebecca" had any particular mental state, which Williams transformed or overcame. Even if Section 2422(b) invariably required proof that the defendant attempted to transform or overcome a minor's will, Williams unmistakably made that attempt.

Williams contended for the first time on appeal that the government's failure to produce a "missing published decoy advertisement" denied him his right to present a defense because that advertisement was exculpatory and material under *Brady v. Maryland*, 373 U.S. 83 (1963), and *California v. Trombetta*, 467 U.S. 479 (1984). The panel identified no viable *Brady* claim regarding either of two posts. Reviewing for plain error, the panel concluded that Williams did not demonstrate that the denial of his *Brady* claim would affect his substantial rights.

Overruling Williams's objections at sentencing, the district court adopted without change the presentence

investigation report, which applied a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 based on Williams's alleged perjury at trial. On appeal, the government agreed with Williams that the district court committed reversible sentencing error because it did not make explicit findings that his testimony was false, material, and willful. The panel concluded that the sentence must be vacated because the district court did not make the findings necessary to establish a willful impediment to or obstruction of justice.

## COUNSEL

David M. Herzog (argued) and Ann Wick, Assistant United States Attorneys; Richard R. Barker, Acting United States Attorney; Office of the United States Attorney, United States Department of Justice, Spokane, Washington; for Plaintiff-Appellee.

Jason B. Saunders (argued), Gordon & Saunders PLLC, Seattle, Washington, for Defendant-Appellant.

## OPINION

McKEOWN, Circuit Judge:

This case centers on a United States Immigration and Customs Enforcement ("ICE") officer, Koby Don Williams, who appeals his jury conviction and sentence for attempted online enticement of a minor in violation of 18 U.S.C. § 2422(b). After his arrest, Williams falsely claimed that he was conducting a human trafficking investigation. Williams challenges the sufficiency of the evidence and argues that the government failed to preserve and produce material exculpatory evidence. Williams also maintains, and the government agrees, that the district court erroneously applied an obstruction of justice sentence enhancement pursuant to U.S.S.G. § 3C.1.1 without making the required specific findings of falsity, materiality, and willfulness. We affirm the conviction, vacate the sentence, and remand for resentencing.

### Background

Williams, an ICE supervisor, was charged with attempted online enticement of a minor. The government alleged that between July 23, 2022, and July 26, 2022, Williams attempted to entice a person named "Rebecca" to have sex with him, even though she repeatedly told him that she was thirteen years old. "Rebecca" was a fictional online persona created by Detective Eduardo Martinez, who led an undercover operation that involved decoy posts featuring underage girls on social media platforms or websites. The operation targeted individuals seeking to have sex with minors.

In the days leading up to the investigation, Detective Martinez drafted and uploaded the decoy post on Craigslist, a website that hosts classifieds in various categories. Martinez wrote the post from the perspective of a sex worker's client who had showed up to meet with "Rebecca" before realizing that she was thirteen years old. That fictitious client then shared the true age of "Rebecca" with other potential johns. To establish communication with potential targets, Martinez provided a phone number in the post. Although Craigslist generally prohibits users from adding phone numbers to their posts, Martinez eventually managed to upload one ("the Warning in Moses Post"), for which he received a confirmation email. The Warning in Moses Post included a disguised version of the phone number that Martinez sought to use for purposes of the operation. Martinez was the only person posting advertisements using the "Rebecca" identity and phone number.

Although the government did not produce an image of the uploaded post in the district court, it produced a draft version and a confirmation email from Craigslist. The draft version of the uploaded Warning in Moses Post said:

> WARNING IN MOSES (Moses Lake) WARNING!!! DONT contact "Rebecca" (fivezero9#416^%6seven28) i met up with her last night in Moses thinking she was 19. SHE IS NOT!! She is 13 year old Prostitute dont get caught up in this guys i ran

as soon as i saw her. BE CAREFUL fivezero941667twoeight

Williams first contacted "Rebecca" around two hours after the Warning in Moses Post came online. He would later testify that he never saw the Warning in Moses Post but instead responded to a different one ("the Yours or Mine Post"), which described "Rebecca" as a sex worker who did not disclose her age, said that she was willing to travel for sex, and had the same phone number as the one in the Warning in Moses Post. The government claims that the Yours or Mine Post never existed. Williams has never produced an image of it. The only evidence that the Yours or Mine Post ever existed comes from Williams's own testimony.

Regardless of how Williams obtained the phone number for "Rebecca," the two proceeded to exchange nearly 100 texts, which the government presented at trial. Williams used the same number as that supplied in the Warning in Moses Post when he initiated contact with "Rebecca" around 11 a.m. on July 23, 2022, and gave the name "Troy."

| TROY: | Hi Rebecca, I got your number from a friend. I just wanted to say hi. My name is Troy |
|---|---|
| REBECCA: | hii how are u |
| TROY: | Doing well I'm in Ellensburg. I'm a guy without any company this week looking for a girl |
| | Tell me about yourself |

REBECCA:     oh i think i know where that is
             i havent been there yet.   im
             sure your friend told you im
             very young

             what u want to know

TROY:        Oh im looking for so

             Someone 18+

             But I do have two teenage
             boys that are curious.   How
             old are you?

REBECCA:     im 13 but some say I look
             older

TROY:        Are you real, I want to
             introduce you to my son.  Are
             you female?

REBECCA:     ya im real and female.  im not
             looking for a bf tho lol

             $$

TROY:        He doesn't need a GF and he
             does have $$$

The texts with "Rebecca" often went like this: Williams would sometimes (but not always) reach out, the two would talk about a meeting and its price, and Williams would express some kind of concern that he was being deceived. Soon after he first messaged "Rebecca," Williams asked for more proof that she was real, including a meeting in public or a video call.  Martinez sent Williams a photograph of an adult undercover female corrections officer, which he modified so that she would appear younger.   He also

arranged for Williams to have three phone calls with that officer. The officer later testified that during one of those calls, Williams stated that he might bring his son, and that they would both have sex with "Rebecca." On the phone and via text, "Rebecca" repeatedly told Williams that she was thirteen, a strategy that Martinez later described as giving Williams "opportunit[ies] to back out."

TROY: Okay, I would love to meet soon. And I know you are 18+ from your pic. Why do you advertise as a minor?

REBECCA: im 13 like i said we can meet next week with you or your son

TROY: If you 13 I'm going to back of the deal for myself I am going to research the legality of setting you up with my son

Damn your are hot though!

Let me know. I'm not going giving up.

REBECCA: lol nothing i do is legal. but im 13 and i will let you know when im in your area. hopefully monday

. . .

TROY: Yes, I need verbal confirmation that you are over 18

REBECCA:  okay im 13 I told u areu just playing me??

TROY:     Do you have ID that shows you are 13?

REBECCA:  bruh I dont have an ID at all lol

As these texts demonstrate, Williams frequently made contradictory statements. He said that he was not interested in having sex with a minor, but that he was also sexually interested in "Rebecca," and that he might want his son to have sex with her. He also suggested an all-expenses-paid trip to Montana with "Rebecca" and his sons.

TROY:     Are you available Monday or Tuesday?

          Im just asking about your availability because I am taking my boys to my place in Montana

REBECCA:  probably like tuesday cause im still on the west side

TROY:     Do you have any interest in traveling to Montana for a few days Paid for of course.

REBECCA:  montana?? wow i would love that but idk if i would be able to

TROY: What ever works, keep me posted

Williams's willingness to pay "Rebecca" for sex was often the subject of conversation, as were his concerns that he was being tricked.

TROY: Well I just saw your listing on CL from an

From an hour ago

Are you still busy, what's going on?

I'm willing to throw down $2500 per night

I don't want to keep trying if this is not real

REBECCA: i dont post on craigslist? but ill be in the area on tuesday like i said. youll be my first person to contact.

TROY: Okay thanks Somebody is posting your number on CL.

REBECCA: yeah someone else texted me saying they saw an ad about me i bet it was some old fukk who wnated me to do weird shit and i said no

TROY:          Understood

Williams's concerns about "Rebecca's" identity and his offering of financial incentives often went together.

TROY:          There are not many hot blonde girls in Othello. You would be like a unicorn. I need a little more proof that you are real before I drops lots of $$$

Throughout these exchanges, Williams's register shifted between negotiating the parameters of the meeting, expressing doubt that "Rebecca" was really a minor, worrying that she was a law enforcement officer, and suggesting that, if she were actually a thirteen-year-old, he would help her. Whatever Williams's concerns were—that "Rebecca" was not a minor, or that she was one—they did not prevent him from continuing to negotiate, plan, and ultimately attend an in-person meeting with her. At some point, the prospect of Williams bringing his sons dropped out of the picture.

REBECCA:       what time works for u tomorrow?

TROY:          I can do it, but the boys are in basketball training camp for 3 days. What's your schedule?

Although Martinez did not anticipate it, Williams also revealed to "Rebecca" that he was a law enforcement officer.

REBECCA:       trying to set my schedule do u thinkk u can be here at 230?

TROY:           Yeah, but there are a few hurdles. I can't draw heavy cash out until the bank opens in the morning. I can drive to your location now and confirm you are the girl in the picture and return tomorrow with money.

The easiest solution is to meet me at a public location if your going to Othello. I'm half way in between the two cities.

Does your Driver read your texts?

REBECCA:       yupp… i wont be in othello until tomorrow and I know u can get the money today or half today and half tomorro im not stupid okay

TROY:           Call me when you have a chance. We can make it work. And I'm not accusing you of being stupid.

I live in Ellensburg, but I can be in Tri-Cities, Othello, Moses or anywhere else with $2500 tomorrow

That's a high end Las Vegas price. I'm curious what is being offered for $2500

I do need to take the day off work tomorrow if we meet. Let me know soon.

REBECCA: 13 year old go for 2500 in vegas ?? I bet it would be more

TROY: Let me know

REBECCA: okay i can do 1800 if youre not wasting my time

TROY: Where are you going to be tomorrow? What do I get for $1800

REBECCA: u sound like a cop im starting to get sketched out

what do u think u get for 1800

TROY: I am a cop. And I will loose my job by doing this, but I'm not afraid. You know if I make the transaction and proposal that you are in the clear. These transactions are hard for a cop that's not looking to arrest anyone. That's why I suggested meeting for coffee. There is no harm. I bet your going to block my number now. Cops need people like you. I know how to make the transaction safe on your part.

REBECCA:        ya right now ur lying lol where u a cop at

TROY:           Yakima, Wa

                It's true

REBECCA:        so u a cop and u trying to fuck me?  doesnt make sense

TROY:           Are you saying that cops don't engage in this type of behavior?  We're only human.

                What do you want me to do? I will introduce myself, show you my credentials and give you money.  It could only harm me.

REBECCA:        okay mr cop what do you want to do for $1800?  idc cops are all dirty in my opinion

                you got a badge?  Let me see lol

                u going to arrest me?

TROY:           No, not going to arrest you.

                No I'm not going to send a pic of my badge that can be displayed

                Don't need the whole world seeing my badge, but I will show it to you

REBECCA:    hmmm okay so what do u
            wanna do

TROY:       For $1800 I would really like
            to take a weekend, spend time
            with you, sex obviously. Chill
            and      watch      some
            documentaries. (I know that
            sounds stupid, but it's what I
            like) cook on the grill and
            whatever you like. No strings
            attached.

REBECCA:    okay i mean im a bit sketched
            but I guess if I get arrested I
            wont be in trouble

The deal was struck. Williams and "Rebecca" were to meet in Othello and have sex for $1800 dollars. Williams arrived at the hotel alone. When he got there, he was arrested. He had $4,075 in cash, generic Viagra, and two large bottles of vodka in his car. He gave a recorded post-*Miranda* statement in which he revealed that he was an ICE officer and claimed to be conducting a human trafficking investigation.

Before trial, Williams filed a "Motion to Suppress Decoy Advertisement, or in the Alternative Compel Authentication." He challenged the authenticity of the Warning in Moses Post because the government failed to produce an image of the published version. The district court denied the motion and explained that the government could authenticate the exhibit through witness testimony at trial.

Williams's primary defense at trial was that he never believed "Rebecca" when she said that she was a minor. He testified that he was seeking sex with an adult sex worker, that he was never interested in having sex with a minor, and that "[v]erification of age [was] paramount to" him. Williams also insisted that he had gotten "Rebecca's" phone number from the Yours or Mine Post, which did not include her age. He also claimed that he never believed that "Rebecca" was a minor because she had sent him a photograph of herself sitting in the driver's seat and wearing a T-shirt of the 1990s band Sublime. He had also noticed that the photograph had been altered with a face filter, which, he testified, is not "made to make you look older." During his closing argument, Williams's counsel emphasized the text messages in which "Rebecca" repeatedly told him that she was a minor, and he repeatedly told her that he did not believe her.

The jury returned a guilty verdict. After trial, Williams moved for acquittal and a new trial. He challenged the sufficiency of the evidence and argued, as he does in this appeal, that Section 2422(b) requires a showing that the defendant sought to transform or overcome the will of a minor. The district court denied Williams's motion.

## Analysis

Williams challenges the sufficiency of the evidence to support his conviction because, he argues, Section 2422(b) required the government to show that he attempted to "transform or overcome the will of a minor." For the first time on appeal, Williams also argues that the government's failure to preserve the final published decoy listing constituted a violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963) and *California v. Trombetta*, 467 U.S.

479 (1984). Finally, Williams argues, and the government agrees, that the district court failed to make the specific findings of falsity, materiality, and willfulness required for the obstruction of justice sentence enhancement pursuant to U.S.S.G. § 3C.1.1. We address each argument in turn.

## I. Conviction Under 18 U.S.C. § 2422(b).

Section 2422(b) provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b). Our de novo analysis of the sufficiency of the evidence claim turns on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). At issue is the applicability of "persuade," "induce," "entice," or "coerce" to Williams's conduct.

We have held that the terms "persuade, induce, entice, and coerce, as used in [Section] 2422(b), have a plain and ordinary meaning." *United States v. Dhingra*, 371 F.3d 557,

562 (9th Cir. 2004) (citation modified). As these words suggest, Section 2422(b)'s mens rea "is subjective—it is what is in the mind of the defendant." *United States v. Meek*, 366 F.3d 705, 718 (9th Cir. 2004); *see also United States v. Rashkovski*, 301 F.3d 1133, 1136–37 (9th Cir. 2002) (in Section 2422(a) cases, "it is the defendant's intent that forms the basis for his criminal liability, not the victims'"). We have repeatedly held that "[t]he victim's willingness to engage in sexual activity is irrelevant." *Dhingra*, 371 F.3d at 567; *see also United States v. Eller*, 57 F.4th 1117, 1121 (9th Cir. 2023) ("Whether [the] intended victims were 'willing' to engage in these acts is ultimately irrelevant[.]"); *United States v. Macapagal*, 56 F.4th 742, 747 (9th Cir. 2022) (holding that the district court "correctly instructed the jury that a minor's willingness to engage in sexual activity is irrelevant to the elements of . . . Section 2422(b)" (citation modified)).

Reviewing this claim in the light most favorable to the United States, we conclude that a "rational trier of fact could have found the essential elements of the crime [of attempted enticement] beyond a reasonable doubt," including the contested element of knowing persuasion, inducement, enticement, or coercion. *Nevils*, 598 F.3d at 1163–64. The evidence is compelling. Pretending to be "Rebecca," Martinez "told [Williams her] age." *See Meek*, 366 F.3d at 720. Williams, in turn, "used money as a negotiating tool to persuade" a person who, again, repeatedly told him that she was underage, to have sex with him. *See Eller*, 57 F.4th at 1120–21. His negotiation extended to bargaining with "Rebecca" about the cost and kinds of sex acts that the illicit transaction would include. *Id.* at 1121. In his communications with "Rebecca," Williams also "made advances of a sexual nature" that included telling her that she

was attractive and that he could not stop thinking about her. *United States v. Goetzke*, 494 F.3d 1231, 1235 (9th Cir. 2007). Williams also "made plans to meet" at a hotel, "where he would engage in sexual activity" with "Rebecca." *See Macapagal*, 56 F.4th at 747. By that point, he had revealed to "Rebecca" that he was a law enforcement officer who could lose his job by engaging in sexual acts with her. He had also raised the prospect of arrest by saying that "[t]hese transactions are hard for a cop that's not looking to arrest anyone." Those revelations signaled to "Rebecca" that Williams was both willing to sacrifice a lot to have sex with her, and that he could use his authority as a law enforcement officer to harm her if she did not comply.

On cross examination, Williams testified that he told "Rebecca" that he was a law enforcement officer to make her feel comfortable and in an effort to be charming. He also testified that he sent her a smiling picture of himself and told her that he had children in order to put her at ease. A reasonable jury could have found that these actions, taken together, constitute persuasion, inducement, enticement, or coercion.

Our conclusion is not undermined by the fact that, according to Williams, he repeatedly told "Rebecca" that he did not believe her when she told him that she was a minor. The jury was entitled to reject his testimony. *United States v. Kranovich*, 401 F.3d 1107, 1112–13 (9th Cir. 2005) ("[W]e must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict.") (quoting *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996)).

A reasonable jury could also find that Williams's conduct constituted a "substantial step" toward completing the crime, as required for a Section 2422(b) attempt conviction. *Eller*, 57 F.4th at 1120–21. A substantial step must "(1) advance the criminal purpose charged, and (2) provide some verification of the existence of that purpose." *Goetzke*, 494 F.3d at 1235–36 (quoting *Walters v. Maass*, 45 F.3d 1355, 1358–59 (9th Cir. 1995)). Additionally, "a defendant's 'actions must cross the line between preparation and attempt by unequivocally demonstrating that the crime will take place unless interrupted by independent circumstances.'" *Macapagal*, 56 F.4th at 746 (quoting *United States v. McCarron*, 30 F.4th 1157, 1162 (9th Cir. 2022)).

Williams's conduct more than crossed that line. His entreaties advanced the criminal purpose of enticement of a minor, and his conduct verified the existence of that purpose. *See Goetzke*, 494 F.3d at 1235–36. Williams "initiate[d] conversation with" someone representing herself as a minor and "propose[d] a rendezvous to perform" certain sexual acts, which he attended. *Id.* at 1237. Following up on his discussion of payments, he made a substantial cash withdrawal from a bank and brought the money to the meeting. *See Eller*, 57 F.4th at 1120–21. He traveled two hours to Othello, Washington, to meet with "Rebecca." *See Meek*, 366 F.3d at 720 ("extensive sexual dialog, . . . repeated sexual references, . . . [and] travel to meet the minor" can constitute a substantial step). When he was arrested, Williams had $4,075 in cash, two large bottles of vodka, and generic Viagra in his car. The jury, as a reasonable factfinder, could—and did—conclude that Williams took a substantial step toward completing the offense.

Williams argues that the government failed to present sufficient evidence that he attempted to "transform or overcome the will of a minor." In effect, he asks us to substitute the minor's will for his mens rea.

Section 2422(b) does not do the work that Williams assigns it. To adopt his proposed gloss on the statute would be to require the government to show that the defendant's purpose was to change the minor's will, and not merely to confirm or exploit it. This view implies that Section 2422(b) targets psychological manipulation or grooming and not propositions or explicit invitations. But the words "persuade," "induce," "entice," and "coerce" do not dictate a change in the minor's will. The word "entice," in particular, bespeaks an effort to attract or tempt, rather than to overpower or change. *See Entice*, Black's Law Dictionary (12th ed. 2024) ("To lure or induce; esp., to wrongfully solicit (a person) to do something."); *Entice*, Meriam Webster Collegiate Dictionary 386 (11th ed. 2003) ("to attract artfully or adroitly or by arousing hope or desire"). The four verbs in Section 2422(b), with their overlapping but distinct meanings, reflect Congress's effort to capture a range of influencing conduct, which is criminal whether the minor was willing or resistant. Whatever intuitive appeal Williams's interpretation may have in other circumstances, it finds no foothold in the language of Section 2422(b). The jury therefore only needed to find that Williams knowingly attempted to persuade, induce, entice, or coerce "Rebecca" to engage in sexual acts with him, and not that "Rebecca" had any particular mental state, which Williams transformed or overcame.

We are not persuaded by Williams's argument that *United States v. Hite* compels reversal. 769 F.3d 1154 (D.C. Cir. 2014). There, the D.C. Circuit held that, "where an adult

intermediary is involved, the defendant's interaction with the intermediary must be aimed at transforming or overcoming the child's will to violate [Section] 2422(b)." *Id.* at 1164. In other words, the court held that the object of the actus reus had to be a minor. *Id. Hite* does not read into the statute a requirement of an unwilling minor, and we do not adopt one here.

As the *Hite* court explained, the "ordinary meanings of the verbs persuade, induce, entice, and coerce demonstrate that [Section] 2422(b) is intended to prohibit acts that seek to transform or overcome the will of a minor." *Id.* at 1161. We have previously noted that that interpretation relied on a definition of "persuade" as "to draw the will of (another) to something, by inclining his judgement . . . or desire to it; to prevail upon, to urge successfully, to do something." *Eller*, 57 F.4th at 1121 (quoting *Hite*, 769 F.3d at 1161). Williams hangs his hat on the D.C. Circuit's "transform or overcome" formulation to raise the bar that the government must clear. But the jury found that Williams did exactly what that definition describes: He drew "Rebecca's" will to a sexual encounter with him by offering her payment for the encounter, negotiating the price, and urging her participation, "which is the essence of persuasion." *See id.* The evidence of that conduct suffices for a Section 2422(b) conviction.

Even if Section 2422(b) invariably required proof that the defendant attempted to transform or overcome a minor's will, Williams unmistakably made that attempt here. When "Rebecca" expressed reluctance about meeting up with him because he "sound[ed] like a cop," he revealed that he *was* a law enforcement officer who would lose his job by having sex with her, but that he was "not afraid" to "make the transaction" for $1,800. "Rebecca" then continued to speak

with him and eventually agreed to meet.   These facts
certainly reflect an attempt to transform a minor's will.
Whatever the precise limits of Section 2422(b) may be,
Williams's conduct clearly comes within its ambit.

Williams also argues that the district court erred when it
denied his motion for a new trial and motion for acquittal.
Because that argument hinges on adopting his preferred
interpretation of Section 2422(b), which we do not, it also
fails.

Williams contends for the first time on appeal that the
government's failure to produce the "missing published
decoy advertisement" denied him his right to present a
defense because that advertisement was exculpatory and
material under *Brady* and *Trombetta*.  Williams never states
whether the "missing published decoy advertisement" is the
Warning in Moses Post or the Yours or Mine Post.  At oral
argument, he stated that he was referring to both.   We
identify no viable *Brady* claim regarding either post.

Because Williams did not raise that *Brady* claim below,
we review it "only to determine if [its] denial would
constitute plain error affecting [his] substantial rights."
*United States v. Guzman-Padilla*, 573 F.3d 865, 890 (9th
Cir. 2009).   Williams bears the burden of establishing
entitlement to relief.[1]  *See Greer v. United States*, 593 U.S.
503, 508 (2021).

---

[1] Williams has forfeited his argument that the district court erroneously
denied his motion to suppress or authenticate the Warning in Moses Post
by raising the issue only in the issues presented section of his opening
brief and in the headings of his opening and reply briefs.  *See United
States v. Tisor*, 96 F.3d 370, 376 (9th Cir. 1996).  Presenting an issue is
not an argument, and neither is a heading in a brief.  Williams has
likewise forfeited his argument, raised for the first time in his reply brief,

We conclude that Williams has not demonstrated that the denial of his *Brady* claim would affect his substantial rights. A defendant asserting such a violation must "do more than speculate that *Brady* material exists." *United States v. Lucas*, 841 F.3d 796, 809 (9th Cir. 2016). Williams cannot show that the Warning in Moses Post was material because he maintains that he never saw it. If he never saw that post, then there is no "reasonable probability" that the government's preservation of a final version would alter the outcome of the proceeding. *See United States v. Houston*, 648 F.3d 806, 813 (9th Cir. 2011) (citation omitted). Williams can also hardly claim that the post, which stated that "Rebecca" was thirteen, would exculpate him had he seen it. *Trombetta*, 467 U.S. at 489.

Likewise, Williams cannot show that the Yours or Mine Post (if it existed, and if that is how Williams got the phone number of "Rebecca") would be material and exculpatory. The only evidence that Williams offers of the existence of the Yours or Mine Post is his own testimony. And even if such a post existed and Williams did not initially know that "Rebecca" was a minor, the Yours or Mine Post cannot be material and exculpatory because Williams still carried on a conversation and tried to meet with "Rebecca" for the purpose of having sex, despite her repeatedly telling him that she was thirteen.

## II. Sentencing Enhancement for Obstruction of Justice

The government argued in the presentence investigation report that Williams had perjured himself at trial and sought

---

that the "decoy advertisement" was "the most material and exculpatory piece of evidence" for an entrapment defense. *See United States v. Kelly*, 874 F.3d 1037, 1051 n.9 (9th Cir. 2017).

to include a two-level enhancement for obstruction of justice under U.S.S.G. § 3C.1.1.  Williams objected and argued that the district court had to "review the testimony and make an independent finding that [he] committed perjury."  Williams renewed his objection at the sentencing hearing.  The district court overruled the objection and "adopt[ed] the presentence investigation report without change," imposing a sentence of 135 months.

The government agrees with Williams that the district court committed reversible sentencing error because it did not make explicit findings that his testimony was false, material, and willful.  The alleged perjury concerns Williams's assertions that he did not intend to engage in sexual acts with a minor, that he saw the Yours or Mine Post, which included the law enforcement number also listed in the Warning in Moses Post, and that he never believed "Rebecca" was a minor.

Perjury becomes an obstruction of justice when "(1) the defendant gave false testimony, (2) on a material matter, (3) with willful intent." *United States v. Castro-Ponce*, 770 F.3d 819, 822 (9th Cir. 2014) (quoting *United States v. Garro*, 517 F.3d 1163, 1171 (9th Cir. 2008)).  In perjury cases like this one, "the express requirement for a finding of 'willful intent' means an intent to obstruct justice by lying under oath." *United States v. Ho-Romero*, 167 F.4th 1037, 1046 (9th Cir. 2026).  The Supreme Court has instructed that "if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice." *United States v. Dunnigan*, 507 U.S. 87, 95 (1993).  In the absence of those findings, Williams's sentence must be vacated.

We **AFFIRM** the conviction, **VACATE** the sentence, and **REMAND** for resentencing.